STATE v. RICHARD ERNEST HARDING.

110 N. W. (2d) 463.

July 21, 1961—No. 38,119.

*Richard Ernest Harding,* pro se, for appellant.

*Walter F. Mondale,* Attorney General, *George M. Scott,* County Attorney, and *Harlan M. Goulett,* Assistant County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

Defendant appeals from an order of the district court denying his motion to withdraw his plea of guilty and enter a plea of not guilty to the crime of attempted murder in the first degree with which he and three others were jointly charged; and from a judgment of conviction.

On July 18, 1959, defendant appeared in municipal court of Minneapolis and demanded a preliminary hearing with respect to the complaint. This was set for July 22, 1959, and on that date he appeared with his counsel, waived preliminary hearing, and was bound over to the district court to await trial.

On July 23, 1959, defendant appeared with counsel and was arraigned in the District Court of Hennepin County on an information which charged him with attempted murder in the first degree. He entered a plea of not guilty thereto and posted bail in the sum of $5,000. His trial was set for September 14, 1959. On August 11, 1959, his previous counsel having withdrawn, defendant retained Arthur Johnson as his counsel. On September 14, 1959, with his new counsel, he appeared in district court and consented that the date for his trial be set for September 21, 1959.

On September 15, 1959, prior to the date set for trial, defendant appeared before the Honorable John A. Weeks and requested permission to withdraw his plea of not guilty and enter a plea of guilty. Thereupon his plea of guilty was accepted and a presentence investigation was ordered. Defendant remained at liberty on bail until October 23, 1959, the date set for sentencing. On that date, defendant and his counsel again appeared. His counsel thereupon asked leave of

the court to withdraw as counsel. At the same time, defendant asked leave to withdraw his plea of guilty and to enter a plea of not guilty to the charge. The court took these requests under advisement and continued the case to November 2, 1959.

On November 2, 1959, Judge Weeks made an order denying defendant's motion to withdraw his plea of guilty and to enter a plea of not guilty, but did not rule upon the motion of his counsel to withdraw. At that time defendant was sentenced to an indeterminate term at the State Prison in Stillwater. On April 29, 1960, he appealed to this court from the order denying his motion to withdraw the plea of guilty and to enter a plea of not guilty and from the judgment entered.[1]

---

[1]On September 15, 1959, when defendant first changed his plea of not guilty to guilty the following proceedings were had:

"Q [By the county attorney] Now, it is your desire * * * and you are pleading guilty to attempt to commit murder in the first degree * * *?" "A Yes, sir.

"Q Do you realize that you have a right to trial by jury?" "A Yes.

* * * * *

"Q You have consulted fully on this charge with your counsel, is that correct?" "A I have, sir.

"Q Do you realize the Court may sentence you up to ten years on this charge?" "A I realize that, sir.

"Q You realize that you are presumed innocent until proven guilty beyond a reasonable doubt if you chose to stand trial?" "A Yes.

* * * * *

"Q On the 9th of July, 1959, in the City of Minneapolis, County of Hennepin, State of Minnesota, you were at an unfinished apartment building at 2801 Pillsbury Avenue South, is that correct?" "A That's right.

"Q And you were with Robert Boyd Vandever on the second floor of that unfinished apartment building, is that correct?" "A That's right.

"Q And you were with Robert Boyd—your purpose of being there was for the demise of George G. Larsgard, is that correct?" "A Yes, that was the plan, that Mr. Larsgard would be set upon there; however, if I may clear this up in my answer. The purpose of my being there was not part of that plan. I came there after Mr. Vandever did. In other words—

"Q Now, my understanding, Mr. Harding, is that the evening before,

■ The basis for defendant's motion to change his plea to not guilty appears to have been his belief that in examination of witnesses sufficient evidence might be elicited to establish that he was not guilty. No statement as to what such evidence would be was submitted. The

---

July 8th, you and Mr. Tree visited this unfinished apartment building, is that correct?" "A Yes.

"Q And you went over a plan for the demise of Mr. George Larsgard for the purpose of collecting insurance that was on the life of Mr. Larsgard * * *?" "A That is correct, sir.

"Q Then the following evening on July 9, 1959, you were present in the building with Mr. Vandever, is that correct, to intercept Mr. Larsgard?" "A I was present in the building, but not at first with Mr. Vandever.

"Q But you were there with him?" "A I was in the building. This is the point I wish to clear up, sir.

"Q Then did Mr. Larsgard come in that building?" "A Yes, he did.

"Q Who did he come in with?" "A He came in in the presence of William Hancox.

"Q You had gone over this plan with William Hancox before that, is that correct?" "A I primarily had gone over it with Robert Vandever. Mr. Hancox, I wasn't too familiar with. I hardly know him at this point.

"Q I see. And then, in your presence, Mr. Larsgard was set upon, is that correct?" "A Yes.

"Q And he was struck?" "A Yes, he was.

"Q And you have become aware his throat was cut?" "A I wasn't aware of that until afterward.

"Q Mr. Larsgard was induced to come to that building by a phone call to him stating that a Mr. Clayton Day would like to see him there?" "A Yes, that is right.

"Q And then Mr. Hancox assumed the name of Clayton Day, is that correct?" "A Yes.

* * * * *

"Q He was present then when Mr. Larsgard was being struck that evening, Mr. Hancox, Vandever and yourself were present when Mr. Larsgard was being struck, is that right?" "A Yes.

"Q In other words, you realize the charge of attempted murder in the first degree, and your plan was, along with Mr. Tree the evening before, to cause the death of Mr. Larsgard, is that correct?" "A That is correct.

court, after reviewing detailed statements made by defendant when he entered his plea of guilty, denied the motion on the ground that a jury trial at this stage would be a farce. Minn. St. 630.29, the applicable statute, provides:

---

"Q And for insurance purposes, is that correct?" "A Yes.

"Q Have there been any threats or promises of any kind to induce you to plead guilty to this charge now?" "A No, there have not.

* * * * *

"Q [By defendant's counsel] Will you tell the Court, in your own words, what has induced you to come in here today, what is your purpose?" "A Yes, sir. I have thought from the very beginning, before the event happened, that it was something that was definitely wrong, and at all times it appeared proper for me to come in and throw myself on the mercy of the Court, and to, in all ways, effect with the situation to be truthful, and hope that the truth would bring about the best results.

"BY MR. SCOTT [county attorney]:

"Q Mr. Harding, what were you going to get out of this?" "A Well, the exact sum was not determined, but it was somewhere in the neighborhood of $5,000.

"Q What promises did you make to Vandever for his part in it?" "A Well, the promises I had made to Vandever did not wholly rest on this, but he was promised a lifetime job by me."

On October 23, 1959, the following proceedings were had:

"MR. JOHNSON: * * * it would appear to the best interests of all concerned that I withdraw as his [defendant's] counsel, and I am, therefore, asking leave of the Court that it may be granted.

"THE COURT: You care to state any reasons?

"MR. JOHNSON: Well, Your Honor, the only reason I can state is that the defendant, at this time, has a request he wishes to make to the Court, and there is a slight, shall we say, difference of opinion, as to that request, and I feel that for that reason the best interests of his defense would be served by my not—

* * * * *

"THE COURT: Is there any objection on your part to his withdrawal?

"THE DEFENDANT: No, Your Honor. The purpose of his withdrawal, if it please the Court, is because at this time I wish to withdraw my plea of guilty, and enter a plea of not guilty. I want to do this, Your Honor, on the basis of new evidence, I will be able to uncover, and I might further state on that, that at the time we pleaded guilty, the only thing, it appeared wise to do, was to throw myself on the mercy of the Court, because the

"A plea of guilty can in no case be put in except by the defendant himself in open court * * *. At any time before judgment the court may permit it to be withdrawn and a plea of not guilty substituted."

---

evidence that appeared to be in the hands of the County Attorney seemed to be overwhelming, but we do not feel that way at this time.

"THE COURT: Well, of course, the principal question is, were you guilty of the offense, in which you were charged, and do you wish to state to the Court what this newly discovered evidence is * * *.

"THE DEFENDANT: * * * it is my contention that this new evidence will prove—it will achieve a not guilty verdict before a jury trial, and for that reason I request the Court allow me to withdraw my guilty plea and enter a plea of not guilty.

* * * * *

"* * * I intend * * * to act as attorney pro se * * * I am sure the County Attorney's office is interested in one thing—justice in convicting the right people.

"MR. GEARTY [Assistant county attorney]: That is very definite.

"THE DEFENDANT: For that reason, I didn't expect they would object to this. I realize this is unusual * * *.

* * * * *

"THE COURT: And is it merely because you think that you have discovered some weakness in the state's case that you think you might be able to maneuver them, or is it because you think possibly you may not obtain the leniency that you may expect in the sentence?

"THE DEFENDANT: No * * * because if * * * I * * * didn't think we could show enough evidence to warrant a jury trial, I wouldn't suggest it * * * but I believe there is sufficient, when it is presented properly * * * that a jury would render a verdict of not guilty. * * *

* * * * *

"THE DEFENDANT: * * * I made an error of pleading guilty. * * *

* * * * *

"THE COURT: —we are somewhat hesitant to put the State to all the expense of going through a trial just to give a guilty man a gambling chance to maybe take a chance with a jury.

"THE DEFENDANT: I can understand your position, Your Honor, but I do feel we have definite evidence that will support our contentions, and I also believe any statements made when I previously appeared in this court will not adversely affect what we will present.

"THE COURT: Well, do you wish to submit a statement or an affidavit as to what that evidence is?

Numerous decisions of this court establish beyond question that the motion to withdraw a plea of guilty and to enter a plea of not guilty is addressed to the sound discretion of the trial court, subject to the usual rules governing its exercise. State v. Jones, 234 Minn. 438, 48

"THE DEFENDANT: Well, it would be a difficult—it would be a bit difficult because a great part of it would be brought out in the examination of witnesses, and for that reason we need the opportunity of having a jury trial, Your Honor.

"THE COURT: Well, I will take this matter under advisement, and I will continue this matter to November 2nd * * *."

The following proceedings were had November 2, 1959:

"THE COURT: The motion was made to change the plea of guilty to not guilty, and is hereby denied.

"The Court has gone over this matter thoroughly, considered every possible point of view in this, and is fully convinced that you are guilty as you have so pled, Richard Harding, and that it would only be a farce to now permit you to withdraw your plea and to go through a trial. So, therefore, the Court is denying your motion to the change of a plea of guilty to not guilty.

"In view of the fact that I am denying the motion to change the plea of guilty to not guilty, I don't believe it is necessary to dispose of Mr. Johnson's motion to withdraw from the case.

"If I had permitted Mr. Harding to change his plea to not guilty, I then believe I would have permitted Mr. Johnson to withdraw from the case, but in view of the fact that I am going to proceed with the sentence at this time, I don't think it will make any difference in your matter.

"MR. JOHNSON: No, that's right, Your Honor.

* * * * *

"Q [By the court] Do you have any physical disability?" "A No, Your Honor.

"Q Is there anything you would like to say?" "A Well, I feel, Your Honor, that the true facts of this situation have not come out yet, and so, for the purpose of the record, I would rather not say anything further about that until I am able to obtain a court trial.

"Q Well, in this statement * * * you do not contend that you are innocent, but all you intimate here is that Larsgard was plotting to kill Tree, is that correct?" "A I intimate? Maybe I didn't make myself clear, Your Honor, but the fact is I do maintain that I am innocent of it.

"Q You never so have said so. Anything further you would like to

N. W. (2d) 662; State v. McDonnell, 165 Minn. 423, 206 N. W. 952; State v. Olson, 115 Minn. 153, 131 N. W. 1084; State v. Henspeter, 199 Minn. 359, 271 N. W. 700; State v. Prickett, 217 Minn. 629, 15 N. W. (2d) 95. In determining whether there has been an abuse of

---

say?" "A Only that I would like the Court's permission to be allowed time to file an appeal to the decision you have rendered.

"THE COURT: Well, you will have time for that. Counsel?

* * * * *

"MR. JOHNSON: * * * it was only when he [defendant] became convinced in his own mind, for some reason or other, which is quite unknown to me, in its completeness that he was not guilty of this crime and, at that time or at that point, of course, is when he began conducting investigations, et cetera, to delve into these facts.

* * * * *

"However, at the inception this man did cooperate. Now, inasmuch as the Court has indicated sentence is going to be imposed, I realize the complete seriousness of an offense such as this, and there could be no crime worse in our society as murder, rape and that sort of thing, and certainly our concern for all of us is the protection of society, and there is no getting around that, and I am not going to stand before the Court and ask for leniency.

* * * * *

"We have a young man 24 years of age, who presents a good appearance. He seems rather intelligent. Although this situation has—he has gotten himself in this situation, doesn't speak for good, sound thinking. The situation he got himself in is a result of the operations, operations which got out of his control—an easy buck. Nevertheless, the fact remains he has no doubt learned something from this and the Court—

"THE COURT: Well, here's the man who for a few thousand dollars is willing to deprive a man of his life, a woman of her husband, and the children of their father.

"MR. JOHNSON: It is terrible, no question about it, Your Honor. * * *

* * * * *

"THE COURT: It is the sentence of the Court that you, Richard Ernest Harding, for the crime of Attempt to Commit Murder in the First Degree, to which you pled guilty, be sentenced at the State Prison at Stillwater, Minnesota, at hard labor, until thence discharged by due course of law or competent authority.

"That is all I have to say, Mr. Harding, and any leniency you receive you have to earn down there at the State Prison."

discretion in denying a motion such as here present, this court must consider all facts and surrounding circumstances which formed the basis of the trial court's determination. Here these would include defendant's statements made at the time he entered his plea of guilty, which appear conclusive as to his participation in a conspiracy to murder George Larsgard for the insurance carried upon his life of which defendant was to receive approximately $5,000. When such statements are considered and viewed in the light of all surrounding circumstances which the court considered, we cannot hold that the court abused its discretion.

■ In State v. Jones, *supra,* relied upon by defendant, we stated (234 Minn. 441, 48 N. W. [2d] 664):

"* * * One who has already entered a plea to a criminal complaint does not have the absolute right to withdraw it. * * *

* * * * *

"While it is true that defendant here moved for permission to withdraw his plea of guilty before sentence, it is our opinion that under § 630.29 the matter of granting the request was discretionary with the trial court and not mandatory." Citing Annotation, 20 A. L. R. 1445; Annotation, 66 A. L. R. 628; 14 Am. Jur., Criminal Law, § 286.

There, in holding that the trial court had abused its discretion in denying defendant's request to change his plea to not guilty, it was said (234 Minn. 443, 48 N. W. [2d] 665):

"* * * he presented testimony at the presentence hearing from a college dean, students, his schoolmates, a home-town doctor, and a minister as to his apparent outstanding mental qualifications, his good family background, his service record, and his general reputation in college and in his community up to the time of his arrest. In addition to that, the record shows testimony from a medical specialist in neurology and psychiatry, from a member of the staff of the state hospital at Fergus Falls specializing in clinical psychology, and other so-called expert testimony in connection with the type of case involved, and examinations and tests made of defendant. While we are not passing on this testimony, it must be observed that it tended to favor defendant."

It appears that the basis of our decision in that case was the fact that testimony presented at the presentence investigation clearly indicated that it might bear heavily upon the question of defendant's guilt or innocence. In the instant case such evidence and circumstances are entirely absent. A careful reading of the entire transcript indicates nothing upon which defendant might base support for his claim of innocence. On the contrary, his own admissions and statements appear conclusive as to his guilt of the crime charged and readily explain the trial court's reluctance to authorize his trial for a crime of which he had fully admitted his guilt. Nothing whatever indicative of his innocence, or of his failure to understand the proceedings, was presented, and under such circumstances we do not doubt that the trial court exercised reasonable discretion in denying his motion for a change of plea.

Affirmed.