# STATE EX REL. JOSEPH J. GRATTAN v. RALPH TAHASH.

113 N. W. (2d) 342.

February 2, 1962—No. 38,329.

*Joseph Robbie* and *Jerome Fitzgerald*, for appellant.

*Walter F. Mondale*, Attorney General, and *Charles E. Houston*, Solicitor General, for respondent, acting warden of State Prison.

MAGNEY, COMMISSIONER.

Petitioner, Joseph J. Grattan, sought a writ of habeas corpus from the District Court of Washington County. After examination of the petition, the court concluded that it did not state facts sufficient to justify the issuance of the writ and issued an order denying the petition. Petitioner appeals from that order.

By information, petitioner was accused of unlawfully, willfully, wrongfully, and feloniously failing to care for his minor children with intent to abandon them, in violation of Minn. St. 617.55. Petitioner turned himself in voluntarily. On April 27, 1959, he appeared before the District Court of Crow Wing County. He told the court that he would like to enter a plea of not guilty and needed counsel. After petitioner had satisfied the court that he was indigent and lacked funds with which to employ counsel, one Darrell Sears was appointed by the court to represent him. At the continued hearing on May 20, 1959, for some

reason undisclosed, Sears did not appear for petitioner and another attorney, Dwane Larson, was appointed counsel for him. On that date petitioner was arraigned and the information read to him. Petitioner then stated to the court, "I would like to ask one question if I may." The court said, "You may." Petitioner then said, "You see certain things have happened in the past few years; I would like if possible to have this reduced to a non-support charge; I think I have sufficient records to show that it was not abandonment." The court replied, "Your only plea then could be not guilty." The court then told petitioner that abandonment was a serious crime and informed him as to the burden of proof, presumption of innocence, and the penalty. Petitioner then said:

"Well, Mr. Larson and I have talked it over; like I told Mr. Larson, I am guilty of non-support, but I have no—there is no use in kidding myself, lying about it, just—I am guilty of that, but at the time I was unable to obtain any steady occupation and keep my job. Of course—"

The court interrupted:

"You are asking the Court to accept a plea of guilty evidently and then to convince the Court you are not guilty; that can't be done; you either plead guilty or not guilty, and it is absolutely immaterial to me which way you plead."

Petitioner responded:

"Yes, that is right.

\* \* \* \* \*

"Well, I will go along as I told Mr. Larson and enter a plea of guilty."

After the entry of the plea of guilty, petitioner was sworn and was asked several questions. One was: "You just left your family and have not supported them, is that right?" To this he replied, "Well, your Honor, it is quite a bit more than that." Later he stated:

"\* \* \* like my attorney was saying, I have not been able to hardly make a living for myself, which is a poor excuse for a man; \* \* \* in construction and finishing work I have got a good working record, and

it just seems they won't take me on any more because I can't pass a physical, * * *."

He said that he had held good jobs but was let out because of physical examinations, "and they let me out because of their insurance policy." It appeared that in 1950 he was severely injured. He received head, chest, and leg injuries and was hospitalized for 2 years off and on. His back and legs were permanently injured, and he still suffers from dizzy spells. He said that at one time he was in a hospital at Coral Gables for 22 weeks, but why was not disclosed. According to his statement, he can no longer work at construction work, which he had followed up to the time of the accident. It has been difficult for him to hold a job after he obtains one. According to the record, he earned $114.90 in 1957 on one job and $1,255 in 1958 from three different jobs. The record is very sketchy and indefinite. In 1955 or 1956, he served 60 days in the Crow Wing County jail on a nonsupport contempt charge.

The court sentenced petitioner to a term of not more than 5 years in the State Prison and then placed him on parole. The parole was later revoked for reasons undisclosed but probably because of failure to pay the $15 per week ordered by the court. At the time the court placed him on parole it commented: "You have tried the patience of all the public officials." This undoubtedly was true because of the frustration resulting from the failure of petitioner to pay for the support of the children and the many attempts to have him do so. But, as the record indicates, facts may have existed which made it impossible for him to comply with the order of the court.

In State v. Townsend, 259 Minn. 522, 530, 108 N. W. (2d) 608, 613, under facts similar to those in the instant case, this court said:

"Clearly, where the charge is desertion or abandonment under § 617.55, intent to commit the offense must be proved to sustain the conviction."

We also said that the statute is not violated when the failure to support is the result of financial inability to do so if there has been a reasonable attempt to work and earn. See, also, State v. Brown, 259 Minn. 284, 107 N. W. (2d) 47. From the statements made by petitioner at

the time of his sentence and the undisputed facts there disclosed, there certainly is a grave question whether he had the intent to commit the felony to which he entered a plea of guilty and for which he was sentenced to the State Prison.

The situation here is very similar to that of State ex rel. Dehning v. Rigg, 251 Minn. 120, 86 N. W. (2d) 723. In that case one Dehning was arrested on a charge of willfully, unlawfully, wrongfully, and feloniously deserting and failing to support a wife while she was pregnant, with intent to wholly abandon her. An attorney was appointed to represent him. After a 10-minute conversation with Dehning, his counsel advised him to plead guilty. This was his only consultation with an attorney relative to his case. A plea of guilty to the charge was entered. Before sentence, Dehning was asked by the court (251 Minn. 121, 86 N. W. [2d] 725):

"Q. And when you left Thurley on February 26th of this year, while she was pregnant, you intended to abandon her?

"A. I don't know, Your Honor, whether I intended to abandon her or not. We had been in a big argument, been arguing for a week. When I left that morning I was going to Minneapolis to see if I could raise some money to keep the business going. It was a slack season and there just wasn't anything doing; and when I left she said that if I left and went to Minneapolis that day, I didn't have to come back. The more I thought about it the madder I got. I got drunk and kept going."

This court said that under those facts defendant's plea of guilty, qualified as it was, should not have been accepted; that the representation given the accused under the facts stated in the opinion was so inadequate as to constitute a deprival of due process and render the court without jurisdiction to proceed with the arraignment; and that the issue was properly raised in the habeas corpus proceeding.

In the Dehning case, accused only expressed a doubt as to his being guilty of abandonment. In the instant case, defendant clearly stated that in his opinion he was not guilty of abandonment but simply of the failure to support and gave facts to substantiate his position, which facts were not disputed. The court, at the conclusion of the hearing, realizing that there was some substance at least to petitioner's con-

tention, said, "Your injury undoubtedly has contributed somewhat to your failure to support * * *."

In the instant case the court-appointed counsel saw petitioner only twice, each time for about 15 minutes; once was prior to the arraignment and the other at the time of the arraignment. The presentence examination of petitioner conducted by counsel indicates that he was not fully informed as to facts pertinent to the situation. He should have asked for further time in order to determine what petitioner's legal rights might be. If the facts brought out at the hearing had come to the attention of counsel, it does not seem possible that he would have recommended the entry of a plea of guilty, which in fact he did. Also, after the disclosure of the facts by the presentence examination, counsel should have requested a withdrawal of the plea of guilty, as such facts fairly disclosed that accused had no intent to commit the felony. Neither should the court have accepted the plea of guilty after a knowledge of the claimed facts.

The trial court's order denying the petition for a writ of habeas corpus is reversed and the case is remanded for further proceedings as may seem proper under our ruling.

Reversed and remanded.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the submission, took no part in the consideration or decision of this case.