UNITED STATES of America,
Plaintiff,

v.

Sammy CARIOLA, Petitioner.

Civ. No. 613–62.

United States District Court
D. New Jersey.

Nov. 30, 1962.

David M. Satz, Jr., U. S. Atty., by Ralph J. Kmiec, Asst. U. S. Atty., for the Government.

Avena & Margolit, Camden, N. J., and John W. Condon, Jr., Buffalo, N. Y., for petitioner.

COHEN, District Judge.

This is a petition to vacate a plea and set aside a conviction entered January 24, 1938. Procedurally the motion is not properly within 28 U.S.C. § 2255, sentence having been served, but will be treated as a petition for Writ of Error Coram Nobis.[1]

---

1. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

Petitioner, along with three other defendants, was indicted for a violation of the "White Slave Act", 18 U.S.C. § 2421; a plea of not guilty was entered on November 5, 1937; his case was severed from that of his co-defendants; and he was tried alone by a jury on January 24, 1938. At the conclusion of the Government's proofs, it is contended that petitioner and his trial counsel were summoned to the bench by the trial judge, now deceased, who advised that if a "technical plea of guilty" were entered, a sentence to the custody of the United States Marshal for a period of one day would be imposed. The petitioner testified that after consultation with his counsel he accepted the judge's advice, withdrew his previous plea of not guilty, and was sentenced. The record discloses that sentence was imposed by a judge other than the trial judge.

The Criminal Docket contains the following handwritten clerical notations:

"1938

Jan. 24    Trial moved before Hon. John Boyd Avis as to S. C. [Sammy Cariola]

Ord Jury drawn      Ord Jury sworn      Jury sworn

Swearing 5 wits.

S. C. Ret plea—Not Guilty & pleaded Guilty

S. C. plea entered as a technical one (by order of ct.)

S. C. Sentence—one day—custody of U. S. Marshal

(Fn.) [Forman]"

---

Petitioner contends that the entry of his plea was not made competently or understandingly and was never intended as a plea of actual guilt to the crime charged. Furthermore, such plea was merely a necessary and proper way to terminate the proceedings and had no legal significance since under Rule 11 of Federal Rules of Criminal Procedure there is no authority for the entry of a "technical plea of guilty".[2] It is urged that under these circumstances petitioner was denied due process of law.

The application for relief is supported by affidavits of the petitioner and his trial counsel. Petitioner avers that he is a responsible citizen and union leader and that his conviction has resulted in embarrassment and loss of prestige. He also maintains that his conviction denies him voting privileges. Counsel avers that at the time of trial he was a member of the Pennsylvania bar for four years, of the New Jersey bar for two years, and prior to his representation of petitioner had tried approximately ten civil and five criminal cases. Lack of experience is now inferred and it is maintained that had it been counsel's understanding that his client was admitting full guilt by his "technical plea of guilty" he would have urged the continuance of the trial.

The Government contends that the issue is moot; that the petitioner understood his plea and the consequences thereof; and that there has been no deprivation of due process of law.

This court has made diligent effort to obtain a transcript of the proceedings to ascertain what colloquy transpired between court and counsel. Both trial judge and court reporter are deceased,

2. Rule 11 provides: "A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty."

and the latter's notes are not in existence. It also appears that the Government's records of this case cannot be located.

On the return day of the application, for the convenience of the petitioner and his present counsel both of whom are out of state residents, the Court proceeded to a hearing on the merits reserving the question of mootness until final decision. Testimony was taken of petitioner and his trial counsel. None was offered by the Government.

■ At the outset, the issue of mootness raised by the Government shall be considered. A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it.[3] "The principal policy basis for the doctrine of mootness * * is to insure that the judiciary will have the benefit of deciding legal questions in a truly adversary proceeding in which there is the 'impact of actuality' [citations omitted] and in which the contentiousness of the parties may be relied upon to bring to light all relevant considerations."[4]

■ It is true that if petitioner can demonstrate that his conviction entails collateral legal disadvantages, *in futuro*, which survive the satisfaction of the sentence imposed it cannot be said that his case is moot.[5] Petitioner, in urging the immediacy of his cause contends, *inter alia*, that as a result of his conviction, he has, in effect, incurred a moral stigma, hampering and impairing his duties as a labor leader and citizen, which he has the right to expunge. This contention was expressly rejected in St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199, wherein the court opined that " * * * the moral stigma of a judgment which no longer affects legal rights does not present a case or controversy for appellate review." However, this Court is content that petitioner's circumstances satisfy the requirement that review will be allowed only when consequences collateral to the imposition of sentence are sufficiently substantial to justify dealing with the merits. Under the laws of the State of New York, wherein he resides, a felon is denied the right to vote. This is a substantial civil right and its possible deprivation warranted the granting of a hearing and a decisional rendition on the merits.[6]

In the final analysis, both the petitioner and the Government should welcome a hearing. Our judicial system endeavors to ensure individuals the maximum protection afforded by our Constitution. The Government, in turn, should be desirous of ascertaining that petitioner's sentence was founded upon a solid basis; if not, it should be the first to urge that the conviction be vacated.

■ Proceeding to disposition on the merits, first considered is petitioner's contention that under Rule 11 his plea was invalid. Although Rule 11 was not in effect at the time of petitioner's plea, it is but a crystalization of long standing principles. In claiming that his plea of technically guilty did not conform to the authorized pleas set forth in said rule, he would have this court conclude that his sentence was predicated on an improper plea, the significance of which was unknown to him; ergo, the judgment of conviction should be vacated. It is further contended that the *reductio ad absurdum* in countenancing this type of judicial innovation of a plea would permit the opening of a Pandora's box to such pleas as "slightly guilty" or "almost guilty."

3. St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199, (1943).

4. Warren, C. J., dissenting, Parker v. Ellis, 362 U.S. 574, 592, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960).

5. Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946); United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

6. Kyle v. United States, 288 F.2d 440, 441 (2nd Cir. 1961).

With these contentions the court cannot agree. Research reveals only one reported case wherein a "technical plea of guilty" was considered. In People v. Select Pictures Corp., Sp.Sess., 199 N.Y.S. 218 (1923), it was held, without discussion, that pleading " * * * 'technically guilty' was equivalent to a general plea of guilty to the charge * * *". The entry of such a plea is not such an egregious blunder as to warrant its vacation. We look to substance rather than form. So viewed, the "technical" portion of the plea shall be treated as mere surplusage. Petitioner's argument becomes an exercise in semantics; there is no merit in making a fetish of the phrasing of the plea where, as here, the court is convinced that petitioner, accompanied and consulted by capable counsel, entered his plea fully aware of its significance.[7] Since the decision of the Supreme Court in Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097, was overruled by that court in Garland v. Washington, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772, it can no longer be said that mere failure to comply with precise ceremonial or verbal formality with respect to the entry of a plea is a denial of due process for which conviction must be set aside.

Out of the just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound. But on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained. In determining whether the plea was voluntarily and understandingly made, it must be viewed as of the time it was submitted to the court. At that time, as the Criminal Docket discloses, two significant utterances were made, one by the defendant retracting a previous plea of not guilty and entering a plea of guilty; the other by the Court ordering the plea entered as a technical one. In an attempt to minimize the impact of the plea of guilty, it is urged that such plea be disregarded as invalid and it is contended that the only plea of record is the technical one which was ordered by the Court to be entered upon the minutes. Nevertheless, here to be considered are the mental processes of the petitioner at the time of his plea, and the actual utterance by him of "guilty" is singularly significant.

Of course, this court cannot inquire into the merits of petitioner's present protestation of innocence. Rather, the issue is whether the plea of guilty was entered voluntarily, advisedly, intentionally, and understandingly, or as a result of force, fraud, fear, ignorance, inadvertence or mistake. Certainly, the trial judge was in a better position to observe and determine the petitioner's understanding of the plea than this court. This was not a case of an illiterate youth entering a plea without benefit of counsel's advice. Here was a man of 28 or 29 years, with 2 years of high school education, and gainfully employed as a head waiter in an Atlantic City nightclub. He had not only the benefit of counsel's advice but that of the Court. After the Government had rested its case, and after conference with the Court and his counsel, the petitioner decided to take the Judge's advice. Now, 24 years later, he awakens to the realization that it was bad advice. Conferences between Court and counsel are not unusual occurrences. There is nothing that transpired here rendering the petitioner bereft of judgment or amounting to a destruction of the voluntariness of his plea and a consequent denial of due process. Additionally, as the Docket discloses, sentence was imposed by a judge other than the trial judge.

7. "Q. Can you recall what plea you gave to the Court; in other words, what you said when the Judge asked you at that time how you pled?

"A. I pled guilty to a technical violation of the Mann Act."
(Transcript P. 4.)

Here, counsel did what every lawyer is obliged to do in such circumstances—lay the entire situation before his client in understandable terms, pointing out the alternatives and possibilities, leaving the final decision to his client. One of the alternatives undoubtedly indicated to the petitioner by his counsel was the possibility of conviction, and the subsequent possibility of a jail sentence.[8] He was confronted with a fateful choice and it is the most essential essence of human nature that he will choose a course to make imprisonment impossible regardless of other available alternatives which might or might not guarantee that result.

From all that transpired it seems obvious that Judge Avis was not persuaded of petitioner's innocence. It is fair to assume that had he been he would, on his own motion, have entered a judgment of acquittal, or had counsel been convinced of his client's innocence, or the insufficiency of the Government's proof, he would have moved for a judgment of acquittal. Here both petitioner and his counsel knew that Judge Avis was about to submit the question of guilt or innocence to the jury, at the conclusion of the Government's case.[9]

Petitioner eliminated the necessity of presenting his case to the jury when he entered his plea and apparently considered it good strategy. Mere improvident strategy, bad tactics, mistake, carelessness, or inexperience do not necessarily amount to ineffective assistance of counsel unless taken as a whole the trial was a mockery of justice.[10] Even misleading advice by counsel to his client is not ground for relief, unless it clearly rises to the level of unprofessional conduct.[11]

We do not have here a hurried plea, entered without adequate consideration and without benefit of counsel. Here a jury was drawn, opening statements made, and the testimony of five government witnesses presented, after which the Government rested. The plea was decided upon by counsel who presumably was about to present his case and evidently was cognizant of its merit. I think it most unreasonable to say that his decision was without sufficient knowledge or adequate advice. Petitioner simply changed his mind and has not sustained his burden of establishing a denial of due process. At this late stage, to give his change of heart legal effect would constitute a denial of due process

---

8. " * * * so I took Mr. Cariola back and I explained it to him and I said, 'Well, we can go to the jury, but if you are found guilty on a technical violation, then there could be a rather serious penalty imposed, and they don't draw distinctions * * *."
(Transcript P. 27.)

9. "Q. Why didn't you make a motion for dismissal of indictment or judgment for acquittal, as it is called, if you felt the government's case was that lacking in force?
"A. I got the impression from Judge Avis that—he didn't say this in so many words—that as regretful as he might feel about the matter, that he might have to let it go to the jury. And it was quite a risk to undertake at this particular time. There was a great deal of hysteria and a whole lineup of cases that had received a great deal of publicity. There were raids in Atlantic City, New Brunswick and Camden, and I felt here we were kind of playing with a great deal of fire.

"Q. In other words, you minimized the risk of an eventually probable verdict of guilty and the perhaps more severe imposition of a penalty—
"A. That's right.
"Q. —by taking the Judge's advice and entering a technical plea of guilty and being sentenced to one day or two hours in the custody of the Marshal?
"A. Yes.
"Q. And was it your strategy that that was the proper thing to do for your client and that was in his best interests?
"A. Yes. I had advised him to do it, as I have indicated before. I advised him to do it * * *."
(Transcript Pages 36, 37.)

10. Edwards v. United States, 103 U.S.App. D.C. 152, 256 F.2d 707 (1958), cert. denied 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed. 2d 82.

11. United States v. Parrino, 212 F.2d 919 (2nd Cir. 1954), cert. denied 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663.

to the Government.[12] In our conscientious desire to be eminently protective of the rights of a defendant, sight must not be lost that the Government, too, has some rights. To grant petitioner's request would lend itself to a lack of finality of judicial procedure and be to the prejudice of the Government.

In furtherance of his argument that the "technical" plea was not an understanding confession of actual guilt, petitioner refers to the "obviously absurd sentence to impose on anyone who had committed a crime of the magnitude of that charged in the indictment." This reasoning falls when resort is had to the disposition of the indictments returned against the three co-defendants. The criminal docket reveals that on January 24, 1938, the same day sentence was imposed on the petitioner, the indictment against one defendant was nolle prossed; another pleaded guilty and received the identical sentence as that of the petitioner; and the third defendant pleaded guilty and received a suspended sentence.

As was stated in United States v. McNair: [13]

"A heavy burden rests upon a defendant who seeks to withdraw his plea of guilty after he has been sentenced. That burden is particularly accentuated when a long period has elapsed after the plea of guilty was entered. If these pleas of guilty are set aside and the defendant is permitted to enter pleas of not guilty, the probability is that the Government would not be able to try these cases * * *. No doubt some of the witnesses may have died; others may have disappeared, and those who are available may not recall all of the details and may not be able to withstand a rigorous cross-examination. It would be a grave injustice to the public to take the action which [plaintiff] now seeks."

If the presumption of regularity of proceedings were permitted to be lightly upset, the court would be forced to look back of and beyond records, into unreported proceedings, conducted by other judges, with witnesses, lawyers, and other court officers long since dead or scattered. A premium would be placed on laxity if an accused could plead guilty, wait until the case had become "cold", and then by challenging jurisdiction or alleging deprivation of constitutional rights, secure a reopening and new trial of his case.

Unfortunate as the petitioner's plight may be, the exercise of the court's discretion must be founded upon the facts, the reasonable inferences flowing therefrom and the applicable law—not simply an undisciplined whim. Application of these tests to the proofs clearly leads to the conclusion that the petitioner has not sustained the required burden of establishing a denial of due process of law, and, accordingly his petition must be denied.

This opinion shall constitute findings of fact and conclusions of law.

The appropriate order may be submitted.

12. See State v. Daniels, 38 N.J. 242, 183 A.2d 648 (1962).

13. 18 F.R.D. 417 (D.D.C.1955) aff'd. 98 U.S.App.D.C. 359, 235 F.2d 856 (1956) cert. denied 352 U.S. 989, 77 S.Ct. 389, 1 L.Ed.2d 368 (1957). Although McNair involved Rule 32(d), Fed.R.Crim.P. which permits the withdrawal of a plea of guilty after sentence only "to correct manifest injustice", the standards of said Rule 32(d) seem, in a sense, applicable to this type of proceeding.