# STATE v. RAYMOND GAROLD WALDRON.

139 N. W. (2d) 785.

January 14, 1966—No. 39,572.

58

*Lee N. Johnson,* for appellant.

*Robert W. Mattson,* Attorney General, *George M. Scott,* County Attorney, and *Theodore R. Rix,* Assistant County Attorney, for respondent.

NELSON, JUSTICE.

Defendant, Raymond G. Waldron, was convicted of the crime of incest on his plea of guilty entered before the District Court of Hennepin County December 5, 1963. He had been charged in an information filed against him on December 3 with having committed the crime by having sexual relations with his 16-year-old daughter on November 24, 1963. He now appeals from the judgment of conviction.

A complaint was filed against defendant in the Minneapolis municipal

court on November 27, 1963, by his wife, LaVonne D. Waldron. A warrant was thereupon issued and defendant was brought before the court on November 30, 1963, at which time defendant was advised with respect to his rights by a member of the staff of the Hennepin County public defender. Defendant then waived a preliminary hearing and on December 3 was arraigned before the district court. He stated to the court that he was without funds to hire an attorney and, after an examination as to the extent of his poverty, the court appointed the public defender as his counsel. No plea was entered at the time and the matter was continued to December 5, at which time defendant appeared with Mr. Kermit A. Gill, the Hennepin County public defender, as his counsel and entered a plea of guilty to the crime charged. He had in the meantime talked over the charge against him with the public defender in a separate room in the county jail. This conference occurred after Mr. Gill had made his own personal investigation, having spent some 3 hours studying the county attorney's file, checking the facts with an investigator from the sheriff's office, and completing what he thought to be the necessary research prior to the hearing set for December 5.

After being arraigned and entering the plea of guilty, defendant was examined by Mr. Gill as follows:

"Q State your full name, please.

"A   Raymond Garold Waldron.

"Q How old are you, Mr. Waldron?

"A   Thirty-six.

"Q Where do you live?

"A   249-21st Avenue North.

"Q And what city is that?

"A   Minneapolis.

"Q Now, in regard to this charge of incest you and I have talked this matter over, is that correct?

"A   Yes, sir.

"Q And you understand that incest is a felony in our State and punishable up to ten years imprisonment?

"A   Yes,  sir.

"Q   And I have further explained to you that you would be absolutely entitled to a trial by jury, is that correct?

"A   Yes, sir.

"Q   And that had you a trial by jury there would be this presumption of innocence unless and until the State introduced evidence to prove your guilt beyond a reasonable doubt?

"A   Yes, sir.

"Q   And you understand this?

"A   Yes, sir.

"Q   And no threats or promises have been made by myself or any other person to induce you to enter this plea of guilty?

"A   No, sir.

"Q   Is this plea of guilty of your own free will and accord?

"A   Yes, sir.

"Q   You are charged specifically with on or about the 24th day of November, 1963, with having sexual intercourse with your daughter, is that correct?

"A   Yes, sir.

"Q   How old is your daughter?

"A   Sixteen.

"Q   No question in your mind that you did upon that date have sexual intercourse?

"A   No, sir.

"Q   And you understand what sexual intercourse is?

"A   Yes, sir."

At this point Mr. Gill requested that a presentence investigation be made and the court so ordered. Upon its completion a hearing was held on January 8, 1964, at which the state moved for sentence. The court then examined defendant as follows:

"Q   How old are you, Mr. Waldron?

"A   Thirty-six. I'll be thirty-seven in June.

"Q   Are you married?

"A   Yes, sir.

"Q   What is your wife's name?

"A   Pardon?

"Q   What is your wife's name?

"A   LaVonne Darlene Waldron.

"Q   How many children do you have?

"A   Six.

"Q   What are their ages?

"A   They vary from sixteen to two and a half.

"Q   Sixteen to two and a half?

"A   Yes, sir.

"Q   How far did you go in school?

"A   Sixth grade.

"Q   Do you have any trade or vocation of any kind?

"A   Well, I had been working as a machinist and sort of a painter.

"Q   Machinist and painter?

"A   Yes.

"Q   Are you qualified as a tradesman in those crafts?

"A   Not quite. I just joined the union.

"Q   What is your religion?

"A   Protestant.

"Q   Is there anything you wish to say before sentence is imposed?

"A   Yes, sir. The only thing is if I had went to the doctor right away instead of monkeying around with a bottle this wouldn't have happened. I have ruined my family, I guess.

"THE COURT: You have done a good job of it, apparently, from the report.

"A   Something I'll remember for the rest of my life."

Defendant was then sentenced to an indeterminate term.

On June 29, 1964, he moved the District Court of Hennepin County to vacate the sentence and to allow him to withdraw his plea of guilty to the charge of incest and to enter a plea of not guilty. This motion was based upon all the files, records, and proceedings in the matter and a supporting affidavit in which defendant made the following claims:

"That at the arraignment the Court appointed Kermit A. Gill, Attorney at Law, of the Hennepin County Public Defenders' office to represent affiant on this charge.

"That said Kermit A. Gill saw affiant on one occasion thereafter and spent not over five minutes with him in the county jail.

"That during said five minute meeting, the elements of the charge of incest was not explained nor was the degree of proof required to prove him guilty at a trial, nor was the possible period of confinement explained to him should he be found guilty or plead guilty.

"The only discussion between said attorney Gill and affiant was whether or not affiant was guilty of the charge of incest to which affiant stated 'he didn't know' and thereafter was told by said attorney Gill to plead guilty as 'he could do more for affiant if he so plead'.

"Affiant asked said attorney about a psychiatric examination to which the attorney replied 'I'll see to it that you get the whole works'.

"That affiant did not hear further regarding any psychiatric examination nor did affiant have any further contact or discussions with said Court appointed attorney until affiant was asked questions on the witness stand as to a plea of guilty.

"That had the elements of said crime of incest been fully explained to him and had the degree of proof for a finding of guilty been fully explained to him, affiant would have entered a plea of not guilty to this charge."

At the hearing on this motion a court-appointed counsel who was not a member of the public defender's staff appeared on behalf of defendant. The public defender, who had consulted with defendant before and represented him at the time he entered his plea of guilty, was presented as a witness on behalf of the state and upon examination testified as follows:

"Q   Would you state your full name and position.

"A   Kermit A. Gill, Public Defender in Hennepin County. My office is at 2140 Rand Tower, Minneapolis 2, Minnesota.

\* \* \* \* \*

"Q   Mr. Gill, have you had an opportunity to read the entire transcript in this particular case?

"A   I have.

"Q   And I notice that in the change of plea transcript in the case

herein that it shows that Mr. Bruce Hartigan was the attorney at the time of the change of plea.

"A   I believe the transcript, after going over it carefully and discussing this matter with Mr. Stasik and also checking the records for the date of December 5th, 1963, that the fact that Mr. Hartigan who was an assistant Public Defender in my office appears is an error, and in fact, I took the change of plea, and in fact, I had interviewed Mr. Waldron in regard to this charge.

"Q   Now, from your examination of the records, and so forth, the defendant in his affidavit states that you did not spend over five minutes with him discussing the elements of the charge of incest.

"A   That's untrue. I might explain for the record he was represented by a member of my staff at the preliminary hearing at which his rights were explained to him, at the preliminary hearing. He was arraigned in District Court December 3rd, 1963 at which time Mr. Hartigan appeared. And subsequently this matter was turned over to me. I might also add that I contacted Mr. Larry McMullen of the Sheriff's Office who had conducted the investigation. I also had an opportunity to go over the County Attorney's file in this matter, inasmuch as I have had experience in incest cases, and frequently the evidence is based upon extreme prejudice and passion by members of the family, so consequently I had the opportunity of looking over the file and the statement of the girl involved, and also was informed by Mr. McMullen as to some of the facts in the case. And I spent approximately two or three hours going over the facts prior to seeing Mr. Waldron about the charge of incest. And after getting the facts I went up to Mr. Waldron and I went over the question of what incest consisted of. And in essence told Mr. Waldron that incest consisted of having intercourse with a person of nearer kin than first cousin. And I also explained to him that in regard to a trial, that he had a right to a trial by jury to determine whether he was innocent or guilty, and if he had a trial by jury, that the State would have to prove all the elements of the crime, namely, the intercourse with the daughter, and that the proof required would be beyond a reasonable doubt. And I also explained to him during the trial a presumption of innocence would follow him throughout that trial unless competent evidence was in-

troduced to overcome this presumption. During the interview Mr. Waldron indicated to me that this was the result of his drinking and that he had needed some sort of psychiatric help. And I explained to him that according to the statement of his daughter involved there was no drinking involved; that at the time he was sober. And I also explained to him in regard to psychiatric examination, that the psychiatric examination would be given if he felt that he was not mentally responsible and didn't know right from wrong. He indicated to me at that time that this was not the case; that he needed some psychiatric examination to overcome his impulses that led to his affair with his daughter. I pointed out to him that possibly he would be given an examination in regard to the psychiatric impulses. However, I pointed out to him that I would not make such a request unless he would indicate to me that he was not mentally responsible for the facts. And he indicated he was responsible. But he felt if he had some psychiatric care this wouldn't have happened. I also pointed out from the record it would indicate this incident happened more than once. And I explained to him under our law he could stand trial, and I also explained to him he could get up to ten years imprisonment for this offense, and as far as the Court's disposition I had no way of knowing until the presentence investigation was in and the Court would take all of the factors into consideration."

The court, after hearing this testimony and the cross-examination by defendant's counsel, denied defendant's motion.

The issues appear to be: (1) Whether defendant was denied effective representation by court-appointed counsel, in this instance the public defender of Hennepin County; (2) whether the trial court in the exercise of its discretion should have vacated the sentence and permitted withdrawal of the plea of guilty when defendant voluntarily admitted his guilt at the time of entering his plea and at the time of sentencing, and has made no claim indicative of his innocence; (3) whether the trial court in its discretion should have vacated the sentence and permitted withdrawal of the plea of guilty where experienced court-appointed counsel investigated the case thoroughly and later conferred with defendant alone, fully advising him as to the facts and the applicable law; (4) whether this court should grant a new trial on the ground that examination of de-

fendant at the time of entry of his plea of guilty was inadequate, a contention first raised on appeal.

■ Article 1, § 6, of the Minnesota Constitution provides that in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel in his defense, and Minn. St. 611.07 also makes provision for counsel for the defense as one of the rights of the accused. It is well settled that the Federal Constitution guarantees to every citizen the right to counsel under the Fourteenth Amendment.

■ However, under the circumstances of this case, can counsel appointed to assist in the defense be found to have so shirked his duties as to result in a denial of defendant's right to counsel? The answer may be found in Avery v. Alabama, 308 U. S. 444, 60 S. Ct. 321, 84 L. ed. 377. In that case the appellant had been convicted of murder and sentenced to death. The Supreme Court of Alabama upheld the conviction against the claims of the appellant that he had been denied right to counsel. Speaking through Mr. Justice Black, the United States Supreme Court upheld the Alabama Supreme Court's decision. In the course of that opinion Mr. Justice Black stated (308 U. S. 446, 60 S. Ct. 322, 84 L. ed. 379):

"* * * [T]he denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."

The right, not only to counsel but to *effective* aid and assistance, has been restated in the more recent cases of White v. Ragen, 324 U. S. 760, 65 S. Ct. 978, 89 L. ed. 1348, and Hawk v. Olson, 326 U. S. 271, 66 S. Ct. 116, 90 L. ed. 61. In both the White and Hawk cases the court made it clear that denial of the effective assistance of counsel to one charged with crime violates due process, and that it is a denial of the accused's constitutional right to a fair trial to force him to trial with such expedition as to deprive him of the effective aid and assistance of counsel.

In reviewing the cases concerned with the foregoing issue there would

appear to be at least two situations which have been held to constitute effective denial of the right to counsel — (1) inadequate time for counsel to prepare a defense, and (2) incompetence or infidelity of appointed counsel. However, there are no hard-and-fast rules as to what is too little time to prepare a defense or what degree of incompetence will constitute a denial of the right to counsel. Each case must be decided on its own facts and merits. Not only has the Supreme Court of the United States held that sufficient time is essential, but other states outside of Minnesota have also held this to be essential to a defendant's right to counsel. In State v. Collins, 104 La. 629, 632, 29 So. 180, 181, the Louisiana Supreme Court held that "[r]easonable time to prepare for his defense should have been allowed the counsel who had * * * undertaken its responsibility."

In the Illinois case of People v. Kurant, 331 Ill. 470, 163 N. E. 411, a defendant was sentenced to death 12 days after counsel was appointed. One of the grounds on which a new trial was granted was that within the time allowed, defense counsel, having moved for a continuance which was denied, was unable to prepare a defense.

In State ex rel. Grattan v. Tahash, 262 Minn. 18, 113 N. W. (2d) 342, where counsel had consulted with defendant only 30 minutes, we held the representation given him was so inadequate as to be a denial of due process. Three other Minnesota cases deal specifically with this element of adequate time — State ex rel. Butler v. Swenson, 243 Minn. 24, 66 N. W. (2d) 1; State ex rel. Bennett v. Rigg, 259 Minn. 437, 107 N. W. (2d) 707; and State v. Osgood, 266 Minn. 315, 123 N. W. (2d) 593.

In the Butler case this court states the following rule as to adequate time for preparing a defense (243 Minn. 28, 66 N. W. [2d] 4):

"* * * It is also clear that the due process requirements of U. S. Const. Amend. XIV, as well as those of Minn. Const. art. 1, § 7, are satisfied if counsel is appointed in sufficient time to assure an adequate preparation of the defense."

We also said (243 Minn. 28, 66 N. W. [2d] 4):

"* * * [A] judgment will be held void for want of due process only

where the circumstances surrounding the trial are such as to make it a sham and a pretense rather than a real judicial proceeding."

In the Bennett case the petitioner claimed that he was afforded inadequate opportunity to confer with counsel following arraignment for prior convictions; that at the time of such arraignment he was given 5 minutes to confer with his counsel in the courtroom. He then pleaded not guilty. Thereafter he was in jail for 5 days and then changed his plea to guilty. This court said (259 Minn. 438, 107 N. W. [2d] 707):

"* * * Although 5 minutes may not be sufficient, petitioner did have adequate opportunity to confer with counsel during the 5-day period preceding his guilty plea. Consequently the brevity of the initial courtroom consultation is not material or prejudicial."

In State v. Osgood, 266 Minn. 315, 123 N. W. (2d) 593, defendant claimed he had had only a brief conference with his counsel prior to arraignment. We remanded for a further hearing upon the particular facts of that case, saying that the right to counsel cannot be nullified by counsel who merely furnishes perfunctory or casual representation and that the right requires that consultations with counsel be sufficiently adequate to inform the accused of all his legal rights under the law and facts involved.

Who is to pass judgment upon whether a counsel's preparation for the defense is adequate or not? There might well be instances where, even if counsel had more than the necessary time required to prepare a defense, the preparation would be considered inadequate by some defendants if they were found guilty.

The case of State ex rel. Butler v. Swenson, *supra,* is analogous to the instant case not only in principle but also on the facts. In the Butler case the court felt that counsel had adequate time to prepare a defense where he conferred with the defendant on the day of appointment and had the next day to prepare for trial. In the instant case defendant urges that the length of time between arraignment and the plea of guilty was too short for the public defender to prepare an adequate defense.

Applying the rule enunciated in the Butler case to this case, it does not appear that the facts and circumstances here are such that the proceedings can be called a sham and a pretense rather than a judicial proceeding.

The record indicates that the public defender and the members of his staff were aware of the facts that led to the arrest of the defendant as far back as the first appearance in municipal court for a preliminary hearing. Certainly the case at bar involves no shorter period of time than that allowed in State ex rel. Butler v. Swenson, *supra,* where this court ruled that the time was adequate. In the instant case there was a continuance of at least 2 days in order that the defendant might prepare for the preliminary hearing which had been reset for his convenience. Having the advice of counsel from the public defender's office, he waived the preliminary hearing. He was arraigned before the district court on the following day but was again granted a continuance to December 5, 1963, Mr. Gill personally taking over his representation after the district court proceeding on December 3. While defendant voluntarily entered a plea of guilty on December 5 before the district court, his counsel asked for a continuance until January 8, 1964, in order to obtain the benefit of the presentence investigation. Defendant fully and openly admitted his guilt at the appearance on December 5, 1963, and again at his appearance on January 8, 1964. He made no application to withdraw his plea of guilty. He made it clear upon being questioned by his counsel and the court that he fully understood the gravity of the charge and that in no manner had he been pressured into entering a plea of guilty. We think the record is clear that his plea of guilty was entirely voluntary and that it was made intelligently and understandingly by one competent to know and understand the consequences.

It is, of course, the duty of the court before accepting a plea of guilty to satisfy itself of the voluntary character of the plea and to have this made a matter of record. As stated, the record here shows that the court in accepting the plea of guilty had determined through the questioning of the defendant that the plea was voluntarily made. The record further indicates that the accused was fully informed of the nature of the crime with which he was charged and of the consequences of a conviction. See, 21 Am. Jur. (2d) Criminal Law, §§ 484 to 489.

■ A withdrawal of a plea of guilty is addressed to the sound discretion of the trial court. State v. Harding, 260 Minn. 464, 110 N. W. (2d) 463; State v. Jones, 234 Minn. 438, 48 N. W. (2d) 662; State v.

McDonnell, 165 Minn. 423, 206 N. W. 952; State v. Olson, 115 Minn. 153, 131 N. W. 1084; State v. Henspeter, 199 Minn. 359, 271 N. W. 700; State v. Prickett, 217 Minn. 629, 15 N. W. (2d) 95.

The applicable statute, Minn. St. 630.29, provides in part as follows:

"A plea of guilty can in no case be put in except by the defendant himself in open court * * *. At any time before judgment the court may permit it to be withdrawn and a plea of not guilty substituted."

The state in its brief has cited certain cases involving withdrawal of a plea of guilty and vacation of sentence in order to enter a plea of not guilty, which are factually dissimilar. In State ex rel. Dehning v. Rigg, 251 Minn. 120, 86 N. W. (2d) 723, this court ruled that the trial court erred in denying a motion to withdraw a plea of guilty where defendant had indicated that he did not know whether he was guilty of the crime charged. An examination of the record in the case at bar refutes the contention that defendant claimed innocence or that the evidence and the circumstances are indicative of innocence. The total absence of any indication of innocence makes the instant case also factually dissimilar to State ex rel. Grattan v. Tahash, 262 Minn. 18, 113 N. W. (2d) 342; State v. Olson, 270 Minn. 329, 133 N. W. (2d) 489; and State v. Jones, 267 Minn. 421, 127 N. W. (2d) 153, where statements made by the respective defendants imposed upon the trial court the duty to enter a plea of not guilty in behalf of the defendant. The instant case, however, is factually similar to the recent case of State v. Anderson, 270 Minn. 411, 134 N. W. (2d) 12, where defendant entered a plea of guilty to the crime of sodomy and at no time denied his guilt or suggested a valid defense. There we held the trial court properly accepted a plea of guilty. Here, it also did and defendant has shown no reason compelling us to hold that the trial court should have ordered the plea withdrawn.

■ In Taylor v. United States (9 Cir.) 238 F. (2d) 409, the court held that the mere allegation, after trial, that mistakes and errors have been made by counsel or that counsel was incompetent and did not try are not enough to show denial of due process or of the right to counsel, and that allegations of incompetence or inefficiency on the part of counsel will not ordinarily suffice, unless counsel's purported representation was such that the trial was made a farce and a mockery of justice.

The general rule is well stated in United States v. Cariola (D. N. J.) 211 F. Supp. 423, 427:

"* * * Mere improvident strategy, bad tactics, mistake, carelessness, or inexperience do not necessarily amount to ineffective assistance of counsel unless taken as a whole the trial was a mockery of justice. Even misleading advice by counsel to his client is not ground for relief, unless it clearly rises to the level of unprofessional conduct."

See, also, Mitchell v. United States, 104 App. D. C. 57, 62, 259 F. (2d) 787, 792; State v. Bailey, 270 Minn. 64, 132 N. W. (2d) 720; State v. Gorman, 219 Minn. 162, 170, 17 N. W. (2d) 42, 46; Annotation, 74 A. L. R. (2d) 1390, 1397.

The case of People v. Hughes, 57 Cal. (2d) 89, 99, 17 Cal. Rptr. 617, 623, 367 P. (2d) 33, 39, states the rule as follows:

"* * * While defendant's counsel on appeal may perhaps feel that he would have tried the case in a different manner, the asserted shortcomings * * *, whether taken singly or together, fall far short of constituting 'such a lack of diligence and competence as to reduce the trial to a "farce or a sham." ' "

In Rivera v. United States (9 Cir.) 318 F. (2d) 606, 608, the court said:

"* * * This court has repeatedly said that to be sufficient the allegations [of incompetence on the part of counsel] must disclose a performance by counsel so incompetent as to make the trial 'a farce or a mockery of justice.' "

In State ex rel. Moriarty v. Tahash, 261 Minn. 426, 429, 112 N. W. (2d) 816, 819, this court states its views in regard to attacks on the competence of appointed counsel, as follows:

"* * * [T]he bare assertion that the attorney for an accused is not competent is not of juridical significance. * * * In the absence of any affirmative showing to the contrary, there is a controlling presumption that court-appointed counsel in a criminal case not only has consulted with his client, the accused, but also has advised him in good faith of his rights in entering a plea of guilty or not guilty."

See, State ex rel. Grest v. Tahash, 261 Minn. 282, 112 N. W. (2d) 54; State v. Alm, 261 Minn. 238, 111 N. W. (2d) 517.

In State ex rel. Adams v. Rigg, 252 Minn. 283, 288, 89 N. W. (2d) 898, 903, certiorari denied, 358 U. S. 899, 79 S. Ct. 224, 3 L. ed. (2d) 149, this court said that—

"* * * a defendant should not be permitted to urge the ignorance or incompetence of, or mismanagement by, his attorney as a ground for a new trial, even in a criminal case, *unless there be a strong showing of both incompetence and prejudice.*"

Again going to the record, we fail to find that defendant has shown actual incompetence on the part of the public defender. The main point of defendant's argument is that the public defender did not spend adequate time with him in preparing a defense, but nowhere in the defendant's brief has he asserted that the public defender did not inform him of his rights. His only complaint is that he did not spend sufficient time with him in doing so. In Taylor v. United States, *supra,* the court said that an allegation that an attorney failed to consult with his client sufficiently was not sufficient grounds to vacate a sentence of the lower court. The facts in that case differ from the facts in this case in that defendant's counsel in the Taylor case was of the defendant's own choosing.

Defendant contends that the public defender could not have elicited sufficiently detailed information in a 20-minute conference nor discussed the factors to be considered in deciding whether he should plead guilty or not. Whether 20 minutes or several hours might be necessary to review the facts with a defendant and explain to him his rights is a completely relative thing. There has been no showing in the case at bar that the time spent was in fact inadequate. The postponements obtained in behalf of defendant, the presentence investigation called for and obtained, and the fact that the public defender, in addition to his appearances, spent several hours in consultation with the investigator from the sheriff's office and in examination of the county attorney's file are entirely contrary to the claims of inadequacy of representation made by defendant. Defendant stated before the court that he understood what was meant by sexual intercourse and that there were no questions in his own mind

but that he did have sexual intercourse with his daughter. He stated that he had talked over the charge of incest with the public defender; that he had been informed of his right to a jury trial; and that the public defender had explained to him the meaning of the presumption of innocence which follows a defendant in a criminal proceeding throughout the trial until overcome by proof beyond a reasonable doubt. The public defender testified also that he had told defendant that the state would be required to prove every essential element of the crime charged.

Defendant contends that there have been no Minnesota rulings as to what degree of penetration will be sufficient to constitute the crime of incest, and that the public defender perhaps gave erroneous legal advice in telling him that any amount of penetration would be sufficient to constitute incest. (The public defender based this advice on what is required in order to constitute the crime of rape.) Certainly such advice would hardly constitute error of such nature as to make the proceedings a mockery of justice in the face of defendant's own voluntarily made statements and admissions which conclusively established his guilt.

■ The record indicates that during the interview with the public defender defendant had indicated to him that the difficulties he had gotten himself into were the result of drinking and that he needed psychiatric help. The public defender explained to defendant that his investigation showed that the complaining witness had stated that there was no drinking involved and that at the time of committing the incestuous act defendant was sober. The public defender, however, stated to defendant that a psychiatric examination would be given if defendant felt that he was not mentally responsible and did not know right from wrong. Defendant indicated that he was responsible for his actions but that he needed a psychiatric examination to overcome the impulses that had led to this offense. The public defender then pointed out to him that he would not request an examination for that reason. Defendant asserted again his belief that had he had some psychiatric care, the crime would not have happened. The public defender no doubt requested a presentence investigation in order that the court might be able to take all of the foregoing factors into consideration before imposing sentence.

This court in State ex rel. Dillard v. Tahash, 265 Minn. 322, 121

N. W. (2d) 602, held that the fact the court-appointed counsel did not obtain a psychiatric examination for the defendant was not sufficient to hold that he was denied due process when he did not profess to be mentally incompetent. Here, defendant did not profess to have been in such state of mind.

■ We feel impelled to conclude upon the record herein that the consultation between defendant and his counsel was adequate to inform the accused of his legal rights. The lapse of time between arraignment and the entry of the plea of guilty does not of itself show that representation was inadequate. We think the record clear that defendant's own admissions made at the time of the plea and at the sentencing were conclusive of his guilt and that since there was no evidence indicative of innocence the trial court did not err in denying the motion for a change of plea.[1] The record does not sustain defendant's claim that he has been denied the right to counsel. There is nothing in the record to indicate that the representation of the public defender was in any respect so inadequate as to make the proceedings a mockery of justice.

Affirmed.

---

[1] See, State v. Harding, 260 Minn. 464, 110 N. W. (2d) 463.