## STATE v. OWEN JONES.[1]

June 29, 1951.

No. 35,415.

*Johanson, Winter & Lundquist, Bryngelson, Pratt & Bradley,* and *Markve & Aune-Markve,* for appellant.

*I. L. Swanson,* County Attorney, *J. A. A. Burnquist,* Attorney General, and *Ralph A. Stone,* Assistant Attorney General, for the State.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of conviction and sentence of the district court.

On January 5, 1950, a complaint was filed with the justice of the peace of Elbow Lake, Minnesota, charging defendant with the crime of sodomy. He was arrested at Fargo, North Dakota, on the same day and lodged in jail at that place. The next day, defendant waived extradition and was returned to Elbow Lake, where he waived preliminary hearing and signed an application to plead guilty to the

[1]Reported in 48 N. W. (2d) 662.

charges preferred. On that same day, he appeared with his attorney and other interested parties before the judge of the district court at Morris, Minnesota, at which time defendant's request to plead guilty was postponed. On January 21, 1950, with several attorneys and other interested parties, defendant again appeared before the same district judge at Morris, at which time a motion on his part to withdraw his application to plead guilty was granted, and defendant was admitted to bail.

On June 7, 1950, represented by three firms of attorneys, defendant again appeared before the district court of Grant county, was arraigned, and pleaded guilty to an information dated June 5, 1950, charging him with the crime of sodomy by carnally knowing a 15-year-old boy. At that time, he was questioned by the court as to his age, family, schooling, service record, previous crime record, if any, and the crime charged. Defendant then requested a pre-sentence investigation, which was granted, and he was released upon his previous bail. After some adjournments, the matter again came before the court at Glenwood on July 13, 1950, at which time another attorney appeared on behalf of defendant in addition to the firms already noted. Witnesses on behalf of defendant were heard from 9:30 a. m. until 4:30 p. m. that day, after which an adjournment was taken until ten o'clock July 26, 1950. Shortly before the time set for the adjourned hearing that morning, defendant caused to be served upon the county attorney at Elbow Lake moving papers asking permission to withdraw his plea of guilty and to substitute a plea of not guilty. Defendant presented this motion at the opening of court that morning. Court adjourned later that day until August 3, 1950, in order to permit the state to prepare counter-affidavits in opposition to the motion. When court reconvened on the morning of August 3, it adjourned until that afternoon in order to permit defendant to prepare additional affidavits. After hearing arguments on the motion, the court denied it. The court then granted defendant permission to proceed further with presenting pre-sentence testimony, but was advised by defendant's counsel that they did not wish to proceed further. The court then pronounced

sentence of confinement at the St. Cloud reformatory for a period of not to exceed ten years. According to the state's brief, defendant was released upon his furnishing $10,000 bail, the amount set by the court.

The only legal questions and assignments of error we need consider are:

(1) Did the court err in denying defendant's motion for an order permitting him to withdraw his plea of guilty and substitute a plea of not guilty on the ground that the word "may" in M. S. A. 630.29 means "must"?

(2) If the court had discretion in permitting defendant to withdraw his plea of guilty and substitute a plea of not guilty during the pendency of proceedings before judgment, was there an abuse of discretion in denying defendant's motion?

M. S. A. 630.29, relating to a plea of guilty and withdrawal thereof, provides:

"A plea of guilty can in no case be put in except by the defendant himself in open court, unless upon an indictment against a corporation, in which case it may be put in by counsel. At any time before judgment the court may permit it to be withdrawn and a plea of not guilty substituted."

It is defendant's contention that under the language of the above statute the trial court has no discretion in the matter when a motion is made by defendant before judgment to withdraw a plea of guilty and substitute a plea of not guilty. It is his position that the word "may" as used in the statute means "shall" or "must"; therefore, that it was mandatory on the court to grant the motion.

We cannot agree with this contention. The word "may" may be construed to mean "shall" or "must," but only when the interests of the public or third persons require it. The use of the words "may" and "shall" is not decisive of whether a statutory provision is directory or mandatory. The word "must" does not necessitate a mandatory construction. 6 Dunnell, Dig. & Supp. § 8979, and cases cited. The words "may" and "must" are used interchange-

ably. To determine the import thereof, consideration should be given to the subject matter, the language of the statute, the importance of the provisions, the object intended to be achieved, and the legislative intent. Cashman v. Hedberg, 215 Minn. 463, 472, 10 N. W. (2d) 388, 393. One who has already entered a plea to a criminal complaint does not have the absolute right to withdraw it. No reversible error can be predicated upon the refusal of the court to permit the defendant to withdraw his plea for the purpose of having a futile dismissal where it appears that he could be immediately arrested upon a warrant issued on the complaint filed. State v. Henspeter, 199 Minn. 359, 271 N. W. 700.

In State v. Arbes, 70 Minn. 462, 73 N. W. 403, this court said that the grant or denial of leave to withdraw a plea of not guilty in a criminal action for the purpose of moving to quash an indictment was within the discretion of the trial court. In State v. Prickett, 217 Minn. 629, 15 N. W. (2d) 95, this court again stated that, where a defendant entered a plea of guilty and afterward moved the court to be allowed to withdraw the plea, the trial court must necessarily exercise judicial discretion in determining the motion.

While it is true that defendant here moved for permission to withdraw his plea of guilty before sentence, it is our opinion that under § 630.29 the matter of granting the request was discretionary with the trial court and not mandatory. Decisions in other jurisdictions having statutes somewhat similar to ours favor such an interpretation. In Annotation, 20 A. L. R. 1445, the general rule is stated as follows:

"When a defendant has pleaded guilty in a criminal case, it is within the discretion of the trial court to permit the plea to be withdrawn."

See, also, Annotation, 66 A. L. R. 628; 14 Am. Jur., Criminal Law, § 286; State v. Machovec, 236 Iowa 377, 17 N. W. (2d) 843.

It is also our opinion that it was not the legislative intent that the word "may" in § 630.29 was to be interpreted as "shall" or "must." If such had been the intent, it would have been a simple

matter for the legislature to so designate. In view of the authorities cited and the plain language of the statute, the word "may" in the instant case must be interpreted as giving the trial court discretion to permit a plea of guilty to be withdrawn before judgment so that a plea of not guilty may be substituted.

■ We next come to the question whether it was an abuse of discretion under the facts and circumstances here to deny defendant's motion, before judgment or sentence, to withdraw his plea of guilty and to substitute a plea of not guilty.

A review of the record satisfies us that it cannot be said that defendant was not well represented at all times in connection with his appearances in court, nor that he did not know what he was doing when he entered his plea of guilty. He had ample time to consider the matter between January 5, 1950, when he was arrested, and the following June 7, when he entered his plea. An examination of the record satisfies us also that the trial court granted every possible courtesy in connection with the various requests made on behalf of defendant for delays in the proceedings, pre-sentence investigations, and the opportunity to bring forth almost every kind of testimony in defendant's behalf in connection with the pre-sentence investigation after the plea of guilty had been entered. It must be remembered here that, although defendant was arrested on January 5, 1950, it was not until after he had been out on bail for five months, with plenty of time to consult with his attorneys, that he elected to plead guilty on June 7, 1950. Even after that, the pre-sentence hearing was not started until July 13, 1950, during which time he was given numerous tests and consulted with outstanding doctors. After this extensive research and preparation, witnesses were heard on behalf of defendant, when another adjournment was taken until July 26, 1950. When defendant moved to change his plea on that date, another adjournment was taken until August 3, 1950. After denying the motion, the court again granted defendant permission to present further testimony in his behalf in connection with the pre-sentence investigation, which was declined.

For the reasons above stated, we can give little credence to defendant's claim that he did not know what he was doing when he entered his plea of guilty. However, in view of the serious and revolting nature of the crime charged, the claim of defendant that if permitted to change his plea to not guilty he would urge several defenses to the charge, and the type of testimony presented in his behalf at the pre-sentence hearing, it is our opinion that it would have been better under the record here for the trial court to grant defendant's motion.

Defendant here entered a plea of guilty to a crime abhorrent to every decent instinct of man. On the other hand, he presented testimony at the pre-sentence hearing from a college dean, students, his schoolmates, a home-town doctor, and a minister as to his apparent outstanding mental qualifications, his good family background, his service record, and his general reputation in college and in his community up to the time of his arrest. In addition to that, the record shows testimony from a medical specialist in neurology and psychiatry, from a member of the staff of the state hospital at Fergus Falls specializing in clinical psychology, and other so-called expert testimony in connection with the type of case involved, and examinations and tests made of defendant. While we are not passing on this testimony, it must be observed that it tended to favor defendant.

Without attempting to detract from our high regard for the ability and judicial fairness of the trial court in the instant case, we realize that this type of case, because of its revolting nature, could affect the usual judicial composure of any trial court.

In Luley v. Luley, 234 Minn. 324, 327, 48 N. W. (2d) 328, 329, this court said:

"In the adjudication of sexual offenses, particular caution must be exercised lest the law in pursuing the guilty deprive the innocent of their rightful protection."

It is our opinion under the record here that defendant's motion to withdraw his plea of guilty and enter a plea of not guilty should have been granted.

Reversed with directions to grant defendant's motion.