STATE v. RICHARD LEE ROGGENBUCK.

136 N. W. (2d) 857.

July 16, 1965—No. 39,514.

*Harold E. Ruttenberg,* for appellant.

*Robert W. Mattson,* Attorney General, *George M. Scott,* County Attorney, and *Theodore R. Rix,* Assistant County Attorney, for respondent.

FRANK T. GALLAGHER, C.

This is an appeal from a judgment entered pursuant to a plea of guilty of the crime of kidnapping. On July 23, 1963, defendant, age 32, was arraigned before the District Court of Hennepin County on a charge of kidnapping in violation of Minn. St. 1961, § 619.34.[1] A public defender was appointed to represent him. On August 12, 1963, defendant appeared and entered a plea of guilty, after which he was examined by the court and by his court-appointed counsel.

Defendant admitted that early in the morning of July 6, 1963, while it was still dark, he approached an automobile in south Minneapolis with an intent to "[g]et the car." It was occupied by a young man named Anderson and a girl. He asked Anderson to leave the car but his answer was "no." Defendant was also questioned as follows:

---

[1]Minn. St. 1961, § 619.34, provided: "Every person who shall wilfully:

"(1) Seize, confine, or inveigle another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within the state, or sent out of it, to be sold as a slave, or in any way held to service, or kept or detained against his will;

\* \* \* \* \*

"Shall be guilty of kidnapping and punished by imprisonment in the state prison for not more than 40 years."

"[By his attorney]:

"Q. Now, in regard to this charge of kidnapping, Mr. Roggenbuck, I have explained to you that this is a felony and could be punished by up to 40 years incarceration in a penal institution?

"A. Yes, sir.

"Q. I have explained to you that under the law, Mr. Roggenbuck, you have an absolute right to trial by jury; is that right?

"A. Yes.

"Q. And you understand that in a trial by jury that you would be presumed to be innocent unless the State introduced competent evidence to prove your guilt beyond a reasonable doubt. Do you understand that?

"A. Yes, sir.

"Q. And no threats or promises have been made by myself or any other person in regard to your plea of guilty here; is that correct?

"A. Yes, sir.

"Q. And do you enter this plea of guilty to this charge of your own free will and accord?

"A. Yes.

* * * * *

"By the Court:

"Q. What did you threaten him with?

* * * * *

"A. I just told him I wasn't going to let him leave. I told him I wouldn't let him leave until it got light out and I would know where I was at.

* * * * *

"[By his attorney]:

"Q. And you were aware of the fact you were keeping him in this automobile against his will; is that correct?

"A. Yes."

After a presentence investigation, defendant again appeared before the court with his attorney, at which time the judge questioned him with reference to two prior convictions. He admitted in the presence of the court that his attorney had explained to him that the court could

impose a double penalty under the law; that he was entitled to a trial by jury as to whether he was the identical person convicted of the prior convictions; and that in a jury trial he was presumed innocent until found guilty by proof beyond a reasonable doubt. He further stated that no threats or promises had been made to him by his attorney or any other person to induce him to enter a plea of guilty to the two prior convictions and that he entered the plea of guilty to those convictions of his own free will.

Upon further questioning by the judge as to what happened in the early morning of July 6, he restated substantially the events referred to above. When asked by the court whether there was anything else he wanted to say before he was sentenced, defendant stated that he would "like to go back over my life and my record." The court then permitted him to review at considerable length some of his past life concerning the death of his mother when he was 4 years old, after which he lived for a time with an uncle and aunt on a farm in northern Minnesota; his father's remarriage; his experiences while living with his father and stepmother; his "running away from home"; his appearance in juvenile court; his early school life; his being sentenced to Glen Lake; his involvement with a group out at Glen Lake; his later sentence to Red Wing; his connection with "a series of burglaries throughout the entire State of Minnesota"; and his later marriage. His story would indicate that his life at times was a difficult one.

The court then sentenced him to the state prison at Stillwater for a maximum period of 20 years for the crime of kidnapping, taking into consideration his previous convictions for two felonies committed in Minnesota.

Defendant again appeared in court with his attorney on September 24, 1963, at which time the judge stated that defendant had advised him by letter that he wished to make a motion vacating the sentence and withdraw his plea of guilty and dismiss his attorney of record pursuant to engaging private counsel and also had requested that he be returned to court to make a motion to vacate the judgment and withdraw his guilty plea because he did not believe he was guilty as charged; that every promise made to him had been broken including the amount

of his sentence and the promise that he would be given the opportunity in court to fully go into what happened on the night in question. When asked by the judge if he was making the motion with the assistance of counsel he said it was on his own. He stated that he intended to obtain his own private attorney but that he did not request him to be present to make the motion because he was unable to obtain a retainer fee for him. The court then continued the matter until October 1. On that date defendant appeared without private counsel. When defendant said that he still wanted to make the motion, the judge stated that he would regard defendant's letter as tantamount to a motion for an order vacating the judgment and for leave to withdraw his guilty plea and enter a plea of not guilty, and that defendant could state whatever he wanted to in support of his motion.

Defendant told the court that he did not feel that he was guilty of the charge of kidnapping because Anderson went with him voluntarily from the point where he got into the car until the place where he got out. He also claimed that he was promised by a priest, now deceased, that he wouldn't be charged with prior convictions, and that he was told by some policemen who questioned him that no pressure would be exerted. After some further discussion, the court denied the motion.

Defendant contends that the trial court erred in accepting his plea of guilty because oral questioning showed that essential elements of the crime of kidnapping were absent; that it abused its discretion and acted capriciously and arbitrarily in denying his motion to vacate his plea of guilty and enter a plea of not guilty; and that it also erred in failing to inform him that consent of the person kidnapped is a defense.

It is our opinion that on the record no reversible error exists in terms of any failure of duty on the part of the trial court to the defendant. Rather, it appears that under the facts and circumstances the trial court extended him every reasonable latitude and consideration in permitting him to present his side of the case, both through his attorney and by himself.

The record seems clear that on his own admissions he violated provisions of § 619.34. He admitted that he refused to let Anderson leave the car in question; that he threatened him if he would try to leave it;

that he told Anderson that he wouldn't let him leave until it got light; that he was aware that he was keeping him in the automobile against his will; that Anderson had knowledge that defendant had a knife and razor during that time; that he forced "them" to drive him around for about 4 hours that night; that when it became light he forced Anderson out of the car, tied his hands behind him, hit him with his fist, left him unconscious, and then got back in the car and had the girl drive him to Maple Plain.

The record also shows that defendant was represented by a public defender prior to and at the time he entered his plea of guilty. He admitted that his counsel had explained to him that the crime was a felony punishable up to 40 years in a penal institution; that he had a right to a jury trial; that he was presumed innocent until proven guilty by competent evidence beyond a reasonable doubt; and that no threats or promises had been made to him in regard to a plea of guilty and that he was making it of his own free will.

It is our opinion that the errors assigned by defendant are without merit. With reference to his charge that the court abused its discretion in denying him permission to vacate his guilty plea and to enter one of not guilty, he cites State v. Jones, 234 Minn. 438, 48 N. W. (2d) 662, as controlling.

In arguing that the trial court did not abuse its discretion in denying defendant permission to withdraw the guilty plea, the state contends that defendant's statements and admissions appear conclusive as to his guilt and fall short of indicating a valid defense. It relies on State v. Harding, 260 Minn. 464, 110 N. W. (2d) 463, and claims that the instant case is distinguishable from State v. Jones, *supra*. We agree with the state's contention.

A motion to withdraw a plea of guilty and to enter a plea of not guilty is addressed to the sound discretion of the trial court subject to the usual rules governing its exercise. State v. Harding, *supra,* and cases cited therein. In the Harding case we said that in determining whether there has been an abuse of discretion in denying such a motion, this court must consider all facts and surrounding circumstances which formed the basis of the trial court's determination including the state-

ments which defendant made at the time he entered his plea of guilty. In the Harding case such statements appeared conclusive to the court as to defendant's participation in a conspiracy to murder a person for the insurance carried upon his life of which defendant was to receive approximately $5,000. We held in that case that when such statements were considered and viewed in the light of all the surrounding circumstances which the trial court considered, we could not say that the court abused its discretion in denying defendant permission to change his plea.

We believe that taking into consideration all of the circumstances here together with the statements and admissions made by defendant prior to his plea of guilty that the trial court did not abuse its discretion nor act arbitrarily or capriciously in denying defendant's motion. The fact situation in State v. Jones, *supra,* was different from Harding or the instant case. In the Jones case the defendant presented testimony at a presentence hearing from a college dean, students, his classmates, a hometown doctor, and a minister as to his apparent outstanding mental qualifications, his good family background, his service record, and his reputation in college and in his community up to the time of his arrest. In addition to that, the record showed testimony from a medical specialist in neurology and psychiatry, from a member of the state hospital at Fergus Falls specializing in clinical psychology, and other expert testimony in connection with the type of case involved, and examinations and tests made of defendant. We observed there that the testimony tended to favor defendant. The basis of our decision in that case that the trial court should have permitted defendant to change his plea was the fact that testimony presented at the presentence investigation clearly indicated that it might bear heavily upon the question of defendant's guilt or innocence. In the instant case such evidence and circumstances are absent; on the contrary defendant's own admissions and statements appear conclusive as to his guilt of the crime with which he was charged. We determined in the Jones case that the trial court abused its discretion in denying defendant's request to change his plea to not guilty but such abuse of discretion did not exist under the circumstances here.

Affirmed.