STATE EX REL. RAYMOND SMITH v. RALPH H. TAHASH.

136 N. W. (2d) 617.

August 20, 1965—No. 39,665.

*Donald E. Gross,* for appellant.

*Robert W. Mattson,* Attorney General, and *Gerard W. Snell,* Solicitor General, for respondent, warden of State Prison.

Sheran, Justice.

Appeal from an order of the district court denying a petition for a writ of habeas corpus without a hearing.

The petition for the writ verified July 17, 1964, was venued in the District Court of Washington County. In substance, it asserts that the

defendant entered a plea of guilty to the crime of robbery in the second degree when arraigned and charged by information with having committed the crime of robbery in the first degree; that he was not guilty of the offense charged in the information or the lesser offense to which he pleaded guilty; and that the plea entered by him was not voluntary.

The trial court was of the opinion that a fact hearing was not warranted for the reason, among others, that the allegations mentioned "are in conflict with the record and are sham and frivolous."

The petitioner, born March 9, 1940, was raised on the Red Lake Indian Reservation. He had little education and no knowledge or understanding of the law. He asserts in effect that the crime charged was committed by Abraham Smith (a brother) and that he did not participate in the theft himself or aid in its accomplishment.

The petition asserts that the plea of guilty to robbery in the second degree was entered only because the defendant was advised by court-appointed counsel that "he would face prison terms of seven years for each of two alleged escapes from the County Jail and forty years for conviction of First Degree robbery" if he did not plead guilty to second-degree robbery. The petition also states:

"In light of the facts *as testified to by the petitioner at the time of sentencing*, it was clear that petitioner entered a plea of guilty to a crime which under the undisputed facts he could not possibly have been guilty of, [that he] entered such a plea involuntarily and was denied the right of effective counsel." (Italics supplied.)

The testimony given initially by Raymond Smith with respect to his claimed participation in the offense was, in part, as follows:

"Q. Mr. Smith, on or about the 19th day of July of this year, did you and your brother Abraham and a girl by the name of Eleanor Barrett go to the Gull Lake Store near Tenstrike at approximately 6:00 or 7:00 o'clock in the evening?

"A. Yes.

\* \* \* \* \*

"Q. Did you and your brother go into the Gull Lake Store?

"A. Yes.

"Q. And did the girl, Eleanor Barrett remain outside?

"A. Yes.

\* \* \* \* \*

"Q. Now while you were in the store, Mr. Smith, did your brother talk to Mrs. Hills, the proprietress, and ask her to purchase some beer?

"A. Yes.

\* \* \* \* \*

"Q. And did Mrs. Hills then walk from one part of the store over to another part where the beer was kept?

"A. Yes.

"Q. And did you and your brother follow her then?

"A. No.

"Q. What did you do while she was walking over there?

"A. I was by the door.

\* \* \* \* \*

"Q. Did you, Mr. Smith, see Mrs. Hills go into the back room or the store-part of her store?

"A. Yes.

"Q. Did your brother follow her back into that part of the building?

"A. Yes.

"Q. And did you see your brother, Abraham Smith, Jr., knock Mrs. Hills down?

"A. No.

"Q. \* \* \* when you went back into the storeroom part, was Mrs. Hills lying on the floor?

"A. I didn't go back there.

"Q. Never went back there at all?

"A. No.

"Q. Were you watching by the front door to determine whether or not anyone else would come in?

"A. No.

\* \* \* \* \*

"Q. What did you do while you were in the store?

"A. I went out.

\* \* \* \* \*

"Q.  Did you go out before or after your brother?

"A.  Before.

"Q.  Where were you when your brother came out?

"A.  In the car.

"Q.  When he came out, was he carrying any beer?

"A.  Yes.

"Q.  How much beer was he carrying?

"A.  A couple of six-packs.

"Q.  Did you see Mrs. Hills on any other occasion that day?

"A.  No.

\* \* \* \* \*

"Q.  Did you on any occasion in that store assault Mrs. Charles Hills?

"A.  No.

"Q.  When you and your brother went into the Gull Lake Store was this for the purpose of taking beer?

"A.  To buy it, yes.

\* \* \* \* \*

"Q.  What were you going to buy?

"A.  A couple of six-packs.

"Q.  Did you have enough money to purchase that?

"A.  Well he had the money, I had a few cents, I was going to buy cigarettes is what I went in for.

\* \* \* \* \*

"Q.  Did you hear Mrs. Charley Hills screaming?

"A.  I heard somebody scream but I don't know who it was.

\* \* \* \* \*

"Q.  What did you do when you heard this scream?

"A.  Nothing.

"Q.  You were in the car at that time?

"A.  Yes."

Had no further testimony been taken it would have been the duty of the trial court to reject the plea of guilty.[1] However, further testimony

---

[1] See, State v. Jones, 267 Minn. 421, 127 N. W. (2d) 153; State v. Olson, 270 Minn. 329, 133 N. W. (2d) 489.

was taken after a recess declared by the trial judge at the request of the defendant's court-appointed counsel.

It is petitioner's claim that during this recess he was induced to testify to participation in the offense upon the representation that the trial judge would not accept the plea of guilty in light of the answers that had been given. What actually occurred during the recess we cannot tell from the record before us, but the transcript of the proceedings relevant to the plea of guilty discloses that at the conclusion of the recess the defendant was interrogated by his own attorney as follows:

"Q. You told the Court you went into the store with your brother, Abraham, on this day, is that right?

"A. Yes.

"Q. Now at the time you went into the store with him, it is a fact, isn't it that you had an understanding that you were going to take some beer out of the store?

"A. Yes.

"Q. In other words, when you stopped there was a plan to go in and steal some beer?

"A. Yes.

"Q. And that is the reason you went into the store?

"A. Yes.

* * * * *

"Q. But at the time that you left the store, you knew that the beer that Abraham was taking out was not purchased from Mrs. Hills?

"A. Yes.

"Q. And you knew that it had been taken from her?

"A. Yes.

"Q. And you also were aware, I believe, that Mrs. Hills had been knocked down in the storeroom?

"A. Yes."

The court then ordered a presentence investigation. Later, in open court with the defendant and his attorney present, the county attorney moved that defendant be sentenced on the charge of robbery in the second degree. The court inquired as to whether either counsel wished to

say anything before sentence was pronounced and both declined. Sentence was then imposed by the court in this way:

"IT IS ADJUDGED AND DECREED that you, Raymond Smith, as punishment for the crime of robbery in the second degree, to the commission of which you have been found guilty upon your own plea of guilty, be and you are hereby sentenced to confinement at hard labor in the state reformatory at St. Cloud in this state until you shall be discharged therefrom by due course of law or other competent authority."

The situation in summary is one where a man is confined following conviction for a felony of which he could not be guilty were his original representations to the court true. There is nothing in the record to explain why, following the recess, defendant changed his testimony so as to admit facts which, if true, made him guilty of robbery in the first degree.

The relevant statutes in force when the alleged crime was committed are Minn. St. 1961, §§ 619.41, 619.42, 619.43, and 610.12.

Section 619.41 provided:

"Robbery is the unlawful taking of personal property from the person of another or in his presence, against his will, by means of force or violence, or fear of injury, immediate or future, to his person or property, or the person or property of a relative or member of his family, or of any one in his company at the time of the robbery. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force used is immaterial. If used merely as a means of escape, it does not constitute robbery. Such taking from the person of another constitutes robbery when it appears that, although the taking was fully completed without his knowledge, such knowledge was prevented by the use of force or fear."

Section 619.42 provided:

"Every such unlawful taking, if accompanied by force or fear, in any case specified in section 619.41, shall be robbery in the first degree:

"(1) When committed by a person armed with a dangerous weapon; or·

"(2)    By a person aided by an accomplice actually present; or

"(3)    When the offender, in order to accomplish the robbery, shall inflict grievous bodily harm or injury upon the person from whose possession, or in whose presence, the property is taken, or upon his spouse, parent, child, servant, or member of his family, or any one in his company at the time—

"And shall be punished by imprisonment in the state prison for not less than five, nor more than 40, years."

Section 619.43 provided:

"Such unlawful taking, when accomplished by force or fear, in a case specified in sections 619.41 and 619.42, but not under circumstances amounting to robbery in the first degree, shall be robbery in the second degree when accomplished:

"(1)    By the use of violence; or

"(2)    By putting the person robbed in fear of immediate injury to his person, or that of some one in his company—

"And shall be punished by imprisonment in the state prison for not less than two, nor more than 15, years."

Section 610.12 provided:

"Every person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids and abets in its commission and whether present or absent, and every person who directly or indirectly counsels, encourages, hires, commands, induces, or otherwise procures another to commit a crime, is a principal, and shall be indicted and punished as such."

Defendant's assertion that events occurring during the recess prompted him to admit involvement in the crime when in fact he did not participate in it directly or indirectly stands undisputed. His brother, Abraham, furnished an affidavit corroborating his contention that he is innocent.

In light of the recent decisions of this court in State ex rel. Dinneen v. Tahash, 272 Minn. 7, 136 N. W. (2d) 847, and State v. DeCloux, 272 Minn. 94, 136 N. W. (2d) 657, we feel that the better course under the circumstances will be to hear the available evidence in support of defendant's claim and in rebuttal thereto. The trial court can then

make the findings of fact and conclusions of law needed to set at rest, one way or the other, the claim of the defendant that he was induced to recant his testimony with respect to the occurrence only because he felt that if he failed to do so he would and could be severely punished. The likelihood that this was the case may be remote. But in our judgment, the averments of Raymond Smith coupled with the proceedings disclosed by the transcript of the arraignment make a hearing advisable.

We remand this case to the district court for a fact hearing on the question of whether the plea of guilty was voluntarily made. If it was, the petition for writ of habeas corpus will be denied on the merits. If it was not, the plea should be vacated and the defendant tried or otherwise released.

Remanded to the district court for a fact hearing.