STATE v. DONALD KRAMER.

139 N. W. (2d) 374.

December 3, 1965—No. 39,669.

---

*Goodrich M. Sullivan,* for appellant.

*Robert W. Mattson,* Attorney General, *Linus J. Hammond,* Assistant Attorney General, and *D. P. Mattson,* County Attorney, for respondent.

NELSON, JUSTICE.

Defendant, Donald R. Kramer, was convicted of the crime of incest by his own plea of guilty entered before the district court. He had been charged, in an information filed against him, with having committed the crime of incest by having sexual relations with a 14-year-old daughter on October 11, 1963, in violation of Minn. St. 609.365 (L. 1963, c. 753, § 609.365). He now appeals from the judgment of conviction therein.

A complaint was filed with the municipal court at Rochester, Minnesota, charging the defendant with incest, and a warrant was thereupon issued and defendant was brought before the municipal court on October 15, 1963. That court set October 28 as the date for a preliminary hearing and made arrangements to have counsel appointed after defendant had represented to the court that he desired representation but was financially unable to procure counsel because of his poverty. An order appointing Harold Krieger as counsel was entered by a judge of the district court sitting at Rochester, Minnesota, on October 16, 1963. Harold Krieger continued as defendant's counsel in his appearances before the municipal court and the district court. On October 28, defendant appeared before the municipal court with his attorney and waived preliminary hearing. Mr. Krieger was reappointed as defendant's counsel before the district court.

Defendant was brought before the district court on October 30, 1963, at which time his court-appointed attorney, Mr. Harold Krieger, requested further time to confer with the defendant and that defendant be provided a mental examination. The district court appointed two commissioners, Dr. Paul F. Wilson, a psychiatrist on the staff of the Mental Health Center at Rochester, and Dr. Maurice J. Martin, a psychiatrist of the Mayo Clinic. These commissioners made their report on November 5, 1963, finding that defendant was not in a state of idiocy, imbecility, lunacy, or insanity so as to be incapable of understanding the proceedings or making a defense and reporting further that the defendant knew what he was doing

and knew that it was wrong at the time of committing the crime with which he had been charged.

On November 27, 1963, defendant was arraigned in the district court, Mr. Krieger appearing as his counsel. The information was read to him and a copy presented to him. Thereafter the following took place:

"THE COURT: Mr. Krieger, before we have a plea in this matter, may I ask you a few questions first? You have had all the opportunity that you need to confer with Mr. Kramer in private about this matter before you advise him to plea, is that right?

"MR. KRIEGER: Do you feel that we have had sufficient time, Mr. Kramer?

"DEFENDANT: Yes.

\*    \*    \*    \*    \*

"MR. KRIEGER: We have, your honor.

\*    \*    \*    \*    \*

"THE COURT: Mr. Krieger, you don't require any additional time, or do you, to investigate the facts or research any law in this case?

"MR. KRIEGER: No, I don't, your honor.

"THE COURT: Mr. Krieger, have you compared the Information as it is set forth in the body of the Information with the section number of the statute and determined that he is properly charged? In other words, 609.365 is the proper section, is it?

"MR. KRIEGER: Yes, your honor, that is.

"THE COURT: And, that's the proper section?

"MR. KRIEGER: Yes, your honor.

"THE COURT: Have you inquired of this defendant as to whether or not he was illegally arrested? Is there anything in your discussions that any of his constitutional rights were violated when he was apprehended?

"MR. KRIEGER: Not as to his arrest, your honor, no.

"THE COURT: I see. Was he advised that he was entitled to an attorney at a preliminary hearing so far as you know?

"MR. KRIEGER: Your honor, I believe he was advised that he was entitled to a preliminary hearing. Mr. Kramer and I had some discussion.

"THE COURT: You represented him at that point?

"MR. KRIEGER: Yes, your honor.

"THE COURT: Oh, yes. I see that on the 16th of October I appointed you in this matter.

"MR. KRIEGER: Right.

"THE COURT: So you represented him in the lower court?

"MR. KRIEGER: Yes, your honor.

"THE COURT: Was there a preliminary hearing or did you waive?

"MR. KRIEGER: The preliminary hearing was waived.

"THE COURT: Therefore, you have no criticism of his certification to this court?

"MR. KRIEGER: No, your honor.

"THE COURT: And the procedures followed?

"MR. KRIEGER: No, your honor.

"THE COURT: Now, have you reason to believe that his constitutional rights were in any way violated in obtaining any statement from him? Let's put it this way: Was a statement, to your knowledge taken from him?

"MR. KRIEGER: Statements were taken, your honor, yes.

"THE COURT: Is there anything in your discussions with him that indicated that these statements were improperly taken?

"MR. KRIEGER: There is one thing, your honor, and that is, the length of time between his arrest, his incarceration, and his advising that he was entitled to legal counsel, and this is what Mr. Kramer mentioned to me upon one of our first meetings.

"THE COURT: Well, it indicates in the certification that the complaint was filed on October 15, charging him with incest as of October 11, and the order of this court appointing you was the 16th which was the day afterward. Now, does he indicate that he was held sometime before the complaint was filed?

"MR. KRIEGER: He indicated to me, your honor, that these statements obtained were obtained prior to his being advised as to the right to have legal counsel.

"THE COURT: I see. You think, then, that if he entered a plea of not guilty and the case was tried there might be some doubt as to the admissability of these statements?

"MR. KRIEGER: This is correct, your honor.

"THE COURT: In view of what you said, there probably should be a hearing before any such statement, if one was signed, is received in evidence. That's true?

"MR. KRIEGER: Yes, your honor, that's correct.

"THE COURT: Now, did you advise him of all of his constitutional rights?

"MR. KRIEGER: Yes, your honor.

"THE COURT: In other words, his right to plead not guilty, his right to a jury trial in this county, his right to legal representation at the expense of the county, the fact that he could not be found guilty unless he was found guilty by unanimous vote of the jury after a trial, and that the state would have to prove his guilt beyond a reasonable doubt, and the jury would be so instructed, and that he would enter the trial with the presumption of innocence, and the jury would be so instructed, and that he would not have to take the witness stand in his own behalf, if he didn't want to, and the county attorney would not be allowed to allude to the fact that he didn't take the witness stand. All of those things have been explained to him?

"MR. KRIEGER: We have gone over them, your honor, and I would ask Mr. Kramer if there is anything about that that is unclear at this time?

"THE COURT: You understand all that, Mr. Kramer? If there is any one of those points that you don't understand, if you will so state, we will explain it to you again.

"MR. KRIEGER: If you would like me to go over them with you, I will.

"THE COURT: Let's do this. I am not asking you now whether you are guilty or not guilty. What I want to be sure about is that you understand what your rights are before you enter a plea. If you are in doubt any of your rights, we had better have it straightened out now. If you entered a plea of not guilty, you would be entitled to a jury trial in Olmsted County. At that trial, you would be entitled to an attorney to represent you at the expense of the county, you being destitute. Before you could be found guilty, the state would have to prove your guilt beyond a reasonable doubt and the jury would be so instructed and you would enter the trial with the presumption of innocence, and the jury would be so instructed and after the trial was over, the jury would have to find you guilty by unanimous

vote of the jury, before you could be found guilty. You know all those things now, do you not?

"DEFENDANT: Yes.

"THE COURT: All right.

"MR. KRIEGER: You know what 'unanimous' means?

"DEFENDANT: Yes.

"THE COURT: Have you also been informed as to the possible punishment or the sentence rather that would be imposed upon you, if you plead guilty—entered a plea of guilty?

"DEFENDANT: Yes, your honor.

"THE COURT: You have told him about that?

"MR. KRIEGER: Yes, I have, your honor.

"THE COURT: Now, before we proceed any further, is there anything else about this matter, in which you are in doubt?

"The record will show that he stands mute.

"Mr. Kramer, at any time, has any sheriff, deputy sheriff, any agent of the state crime bureau, or any police officer, any prosecuting attorney, assistant prosecuting attorney, judge of a municipal court, or justice of the peace or judge of any court of record, or any person in authority, made any promises to you of leniency if you would enter a plea of guilty to this Information?

"DEFENDANT: Well, they told me down there when they took my statement there wouldn't be much to it.

"THE COURT: They told you that if you plead guilty, they told you what?

"DEFENDANT: No. Not if I plead guilty. If I signed a written statement there would be nothing much come of it.

"THE COURT: Who said that?

"DEFENDANT: The sheriff that brought me in.

"THE COURT: Deputy sheriff?

"DEFENDANT: Yes.

"THE COURT: And, on that promise, you signed a statement, is that it?

"DEFENDANT: Well, he said there wouldn't—I asked him if it would be a lot of stuff connected with it and he said, 'No, there wouldn't be much to it.'

"THE COURT: Well, if you plead not guilty and such a statement is offered in evidence, I can assure you that if the court has any doubt or—I mean, if the court is of the opinion that such a statement was made to you and that because of it you signed the statement, this statement would not be received in evidence against you. Now, you know that before you plea, is that right?

"DEFENDANT: Yes.

"THE COURT: You understand?

"DEFENDANT: I understand.

"THE COURT: Has any such person threatened you with bodily harm or duress if you did not plead guilty?

"DEFENDANT: No.

"THE COURT: Would it be true now to say that any plea that you make now is voluntary?

"DEFENDANT: Yes.

"THE COURT: You understand now as you stand before this court, you are here with no promises of leniency or anything of that nature, if you plead guilty, you understand that?

"DEFENDANT: Yes, your honor.

"THE COURT: Now, to this Information, what is your plea? Guilty or not guilty?

"DEFENDANT: I will plead guilty, your honor.

"THE COURT: I prefer if you wouldn't use that language, 'I will plead guilty.' Are you guilty or are you not guilty? I don't want you to plead guilty, if you are not guilty.

"DEFENDANT: Yes. I am guilty.

"THE COURT: You are guilty and there is no doubt about it, is there?

"DEFENDANT: No.

"THE COURT: No doubt about it. All right. Mr. Mattson."

The court then placed the defendant under oath and conducted a presentence examination of the defendant, and defendant admitted sexual relations with his daughter on six or seven occasions over a six months' period. After the presentence examination the court imposed a sentence of up to ten years.

The defendant contends on appeal that his constitutional rights were

violated in that when taking statements from him the deputy sheriffs failed to advise him of his right to counsel or of his right to remain silent; that the deputy sheriffs took statements from him on October 14 and 15, 1963, before counsel was appointed on October 16 and that these statements were involuntary and a violation of due process by reason of Deputy Sheriff Fischer's stating that "there would be nothing much come of it."

There is no showing that any statement made or signed by defendant in the presence of the deputy sheriffs was ever referred to or made a part of the record, except the above-quoted inquiry by the court resulting in a voluntary plea of guilty by defendant. No testimony was taken at the preliminary hearing of October 28 because defendant, represented by counsel and pursuant to his advice, waived a preliminary hearing. There is no showing that any statements or testimony of statements made to the deputy sheriffs was ever presented or admitted into evidence during any of the proceedings had before the district court prior to defendant's entry of his plea of guilty.

In the proceedings preceding the plea of guilty the court fully informed the defendant that if he had made or signed any statements at the instance of the deputy sheriffs under any belief that they were to be treated lightly or that he was told that "there would be nothing much come of it," the court would carefully consider such statements as to their admissibility should the defendant choose to plead not guilty. The defendant has directed this court's attention to cases bearing on the admissibility of confessions in the trial of a case, but those cases are hardly pertinent here where a plea of guilty has been voluntarily entered. The record indicates that the application for appointment of counsel was made on October 15, 1963, and the order of appointment was made and entered one day later.

Defendant first appeared in the district court on October 30, 1963, at which time Mr. Krieger appeared as defendant's attorney and the court promptly reappointed him to represent the defendant before the district court. A reading of the transcript of the proceedings in the district court which preceded defendant's plea of guilty shows that the court exercised the utmost caution in order to fully protect the rights of the defendant. The transcript makes it clear that the defendant, through the assistance of court-appointed attorney and the court, was fully advised of the

nature of the proceedings and the consequences of a plea of guilty should he choose to voluntarily enter one. The presumption of fair and orderly conduct by state officials without coercion or distortion exists until challenged by facts to the contrary. In re Groban, 352 U. S. 330, 77 S. Ct. 510, 1 L. ed. (2d) 376.

In Anonymous v. Baker, 360 U. S. 287, 79 S. Ct. 1157, 3 L. ed. (2d) 1234, the United States Supreme Court held that although defendant in a state criminal proceeding has an unqualified right to be represented at trial by retained counsel such right to counsel has not been extended to the investigation stages of such proceeding.

We do not find that Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. (2d) 977, applies to the facts in this case or that that decision has changed the law expressed in the two aforementioned cases. The lower Federal courts have so expressed themselves. Long v. United States, 119 App. D. C. 209, 338 F. (2d) 549; Latham v. Crouse (10 Cir.) 338 F. (2d) 658.

The record of the proceedings in the instant case establishes conclusively that the statements and admissions made by defendant before the court were freely and voluntarily made, no force, persuasion, pressure, or undue influence being used to exact them from him. His admissions of guilt were voluntary, as was his plea of guilty entered in the presence of his counsel, and free from any ruling by the court working to the prejudice of the defendant in deciding whether to enter a plea of not guilty and stand trial.

So far as we are able to determine from the record herein defendant's own admissions and statements were conclusive as to his guilt of the crime charged, and the court under the circumstances did not err in accepting defendant's plea of guilty upon the record before us on this appeal.[1]

Affirmed.

---

[1] See, State v. Roggenbuck, 271 Minn. 557, 136 N. W. (2d) 857.