## STATE v. JOE EDWARD INGRAM.

141 N. W. (2d) 802.

March 18, 1966—No. 39,906.

*John J. Doherty,* for appellant.

*Robert W. Mattson,* Attorney General, *George M. Scott,* County Attorney, and *Theodore R. Rix,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

Appeal from a district court judgment of conviction.

Appellant was charged with the crime of aggravated assault in viola-

tion of Minn. St. 609.225, subd. 1 (L. 1963, c. 753, § 609.225, subd. 1). He waived preliminary hearing and was bound over to the district court where his case was assigned to the public defender of Hennepin County. Upon arraignment he pleaded not guilty. Trial commenced in the Hennepin County District Court on September 9, 1964. That morning a jury was duly impaneled and sworn. After the noon recess the court was advised by Mr. Kermit A. Gill, who was appointed as counsel on behalf of the defendant, that the defendant would, if permitted, enter a plea of guilty to an information amended to charge him with violation of § 609.225, subd. 2 (L. 1963, c. 753, § 609.225, subd. 2).

The relevant subdivisions of the statute read as follows:

"Subdivision 1. Whoever intentionally inflicts great bodily harm upon another may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $10,000, or both.

"Subd. 2. Whoever assaults another with a dangerous weapon but without intent to inflict great bodily harm may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both."

Before the plea of guilty was accepted, the Honorable Rolf Fosseen, the presiding judge, was advised by defendant that he had been informed of the nature of the amendment and the penalty to which he was exposed by his plea of guilty; that he understood that in the absence of a plea of guilty he had an absolute right to trial by the jury which had been impaneled and sworn to try his case; that he had consulted with his court-appointed attorney and members of his family; and that the plea of guilty was entered by him freely and voluntarily. With respect to the details of the charged offense, he testified that he had entered Cliff's Restaurant on Plymouth Avenue North in Minneapolis at about 4:30 a.m. on August 23, 1964, to "change a $20 bill." It was a Sunday morning. He had a .22 caliber revolver in his possession. In the process of leaving, he testified, these events occurred:

"A. I met some person coming in from the outside and the person bumped against me and I told him to watch it. I turned around and I went on my way back out the door and someone behind me said some-

thing, I didn't catch the words, but I looked around and this man was getting up off of a stool and he put his coat back and I seen something.

"Q.   What did you do then?

"A.   So self instinct I suppose, I thought he was intending to do me bodily harm, so I was protecting myself.

"Q.   Did you fire some shots?

"A.   I did, sir.

"Q.   How many shots did you fire?

"A.   At the time I didn't know until I got outside and I checked my weapon and then I found that I had fired five times.

"Q.   Was the revolver empty?

"A.   It was, sir, because that was all, I only had five chambers full.

"Q.   This ordinarily has six chambers, is this correct?

"A.   Yes.

"Q.   And you carried only five bullets in the chambers?

"A.   I did.

"Q.   In this regard you subsequently learned that this man you fired the shots at was James Dill?

"A.   I found that out after I came to jail.

"Q.   At the time you fired the shots at this particular person did you know it was James Dill?

"A.   No, I did not.

"Q.   Is it also true you did not know James Dill?

"A.   True."

The trial judge referred the matter to the Department of Court Services for a pretrial investigation and report. Defendant again appeared before the trial judge on October 15, 1964, when the state moved for sentence. Before sentence, Judge Fosseen interrogated Mr. Ingram, the questions asked and answers given including these:

"A.   Well, I was with friends so I went in to change the $20 bill. The proprietor wouldn't change it unless I bought something, so I bought a cup of coffee. I didn't stay in there long enough to drink the coffee, I gave it away, and I started back out the door. I had only been in about a minute and a half or something like that, I would say. I started back out

the door, and on my way out another party was coming in and they bumped against me so I asked them — I told them, as a matter of fact, to watch out, and then I started back out the door, and I happened to look around and there was a person sitting at the end of the counter and he fanned his coat back, reaching his right hand back like this, started toward me, so the accident occurred then.

"Q. And then you had a gun on your person?

"A. At the time, yes, sir.

"Q. What kind of a gun was it?

"A. .22 caliber.

"Q. Revolver?

"A. Yes, sir.

"Q. And how many cartridges did you have in the chamber?

"A. Five, sir.

"Q. And how many shots did you fire at this man?

"A. I would say that I fired them all.

"Q. All five?

"A. I think so, sir.

"Q. And you did hit him, did you?

"A. Yes, sir.

"Q. It appears that four bullets penetrated the wall and tile, and one of them hit the man, is that right?

"A. I can't say, sir.

"Q. You don't know. What happened to him after you fired the five shots?

"A. I don't know that, sir.

"Q. Did you leave then?

"A. Yes, sir, I ran out of the place.

"Q. Did you later learn the name of this man that you fired at?

"A. I did, sir.

"Q. And his name is James Dill?

"A. Right, sir.

"Q. He was a total stranger to you, I understand?

"A. That's right, sir.

"Q. Never had seen him before?

"A.  No, sir.

"Q.  Then after leaving the cafe where did you go?

"A.  I went to my automobile, sir, I ran to my automobile.

"Q.  How far away was it from the cafe?

"A.  About three blocks, I would say.

"Q.  How did it happen, you parked so far away?

"A.  At the time the car wasn't in running condition.

"Q.  And you reloaded your gun at that time?

"A.  I did, sir."

The sentence imposed by the district court was that defendant be committed to the custody of the commissioner of corrections at Stillwater, Minnesota, for an indeterminate term and until discharged by due process of law or competent authority.

We are urged to reverse the judgment of conviction; to direct that a plea of not guilty to the amended charge be substituted for the plea of guilty entered by defendant; and to order a new trial on the merits.

The record before us does not justify relief. The information as originally filed was adequate to inform defendant of the charges pending against him. Competent counsel was provided at the critical stages of the proceedings. There is no showing that evidence obtained in violation of defendant's constitutional rights was used to induce him to plead guilty to the reduced charge on account of which he was convicted. His right to a jury trial was respected; a jury had been impaneled and sworn to try his case when the plea of guilty was interposed. Had the information not been amended to charge a lesser offense, defendant, if tried and found guilty, could have been exposed to a possible 10-year sentence. Even if we accept as correct defendant's present claim that he actually knew the man whom he shot before the occasion involved and that he feared him, the likelihood of an acquittal on the original charge seems remote under the circumstances disclosed by the record. The determination to enter a plea of guilty to the lesser offense seems well advised, even in retrospect. While the attack now being made on the judgment of conviction illustrates the reason why such pleas should be accepted by the trial court with great caution, we think it clear in this case that the determination must be affirmed. See, State ex rel. Welper v. Rigg, 254

Minn. 10, 93 N. W. (2d) 198; State v. Jacobs, 261 Minn. 194, 111 N. W. (2d) 520; State v. Alm, 261 Minn. 238, 111 N. W. (2d) 517; State ex rel. Grest v. Tahash, 261 Minn. 282, 112 N. W. (2d) 54; State ex rel. Flynn v. Rigg, 256 Minn. 304, 98 N. W. (2d) 79; State ex rel. O'Neill v. Rigg, 256 Minn. 293, 98 N. W. (2d) 142; State v. Anderson, 270 Minn. 411, 134 N. W. (2d) 12; State v. Roggenbuck, 271 Minn. 557, 136 N. W. (2d) 857; State ex rel. Savage v. Rigg, 250 Minn. 370, 84 N. W. (2d) 640. Compare, State ex rel. Dehning v. Rigg, 251 Minn. 120, 86 N. W. (2d) 723; State ex rel. Grattan v. Tahash, 262 Minn. 18, 113 N. W. (2d) 342; State v. Jones, 267 Minn. 421, 127 N. W. (2d) 153; State v. Olson, 270 Minn. 329, 133 N. W. (2d) 489; State ex rel. Smith v. Tahash, 272 Minn. 168, 136 N. W. (2d) 617; State v. Jones, 234 Minn. 438, 48 N. W. (2d) 662.

Affirmed.